## PAGE VS. DICKERSON.

JURISDICTION: STATE AND FEDERAL COURTS. *Jurisdiction of state courts in questions growing out of sales of patent rights.*
RESCISSION OF CONTRACT. (3) *Fraud in sale of patent right.*

1. While the federal courts have exclusive jurisdiction of all actions arising under the patent laws, and of controversies relating to the valididy of patent rights, yet where an action is brought in a state court upon a promissory note given for a patent right, and the defense is that there was no consideration because the right was not useful for any beneficial purpose, this court has held that the state court may try the issue thus presented. *Rowe v. Blanchard,* 18 Wis., 441.
2. Whether that doctrine be correct or not, the state courts have jurisdiction of actions where the contract of sale of a patent right is sought to be rescinded because procured by fraudulent representations of the vendor as to the value and usefulness of such right.
3. Plaintiff was entirely ignorant of the business of making steel, and defendant represented that he was an expert in that business, and had spent twenty years in experimenting therein, and that the method for which he had obtained a patent was unknown to any other person but one in the country, and, where used, would increase the value of all articles manufactured of steel, from twenty-five to seventy-five per cent. Plaintiff was induced by these representations to purchase an interest in said right at a high price · but said representations as to

Page vs. Dickerson.

the novelty and value of the defendant's process were false, and the patent of very little value. *Held*, that plaintiff was entitled to a rescission of the contract of sale, and also to a return of the personal property transferred by him to defendant in payment, or to the value of such property.

APPEAL from the Circuit Court for *Outagamie* County.

The judgment sought in this action was, that a certain contract between the parties, for the sale by defendant to plaintiff of a one-fourth interest in a certain patent right for "an improved method of working iron and steel," be rescinded and declared of no effect, and be delivered up to plaintiff to be cancelled ; that defendant be required to deliver up to the plaintiff all notes and orders and all personal property received from plaintiff in fulfilment of his part of said contract, and still remaining under defendant's control ; that he be restrained from disposing of such notes, orders and personal property, and from prosecuting any action for the enforcement of said contract, until the further order of the court ; and that plaintiff recover of defendant $1,200 for expenses incurred in attempting to sell said patent right and to test the value thereof, etc., and also recover the value of personal property and choses in action delivered by plaintiff to defendant upon said contract, which might be incapable of being reached by the order of the court, etc. The most important allegations of the complaint, upon which this remedy was demanded, are recited in the opinion. The answer put in issue the material averments of the complaint.

The circuit court found as a fact that none of the allegations of the complaint, not admitted by the answer, were true ; and held that the defendant was entitled to judgment that the complaint be dismissed, with costs, but without prejudice. Judgment accordingly ; and the plaintiff appealed.

*Felker & Weisbrod*, for appellant, argued that, in cases of this kind, the state courts have jurisdiction to inquire into the value or validity of a patent (*Rich v. Hotchkiss*, 16 Conn., 408; *Cross v. Huntly*, 13 Wend., 386; *Rowe v. Blanchard*, 18 Wis., 441;

*Head v. Stevens*, 19 Wend., 412); that in cases of alleged fraud, courts of law and equity have concurrent jurisdiction, and the injured party may, at his option, apply to the one or the other (*Goss v. Lester*, 1 Wis., 43; Willard's Eq., 145); and upon the evidence they contended that defendant made the representations alleged in the complaint, and that they were false, and the patent of no value.

*James Freeman*, for respondent, argued that the patent itself was *prima facie* evidence that the thing patented was a new and useful improvement and invention, and of practical benefit for the object proposed (31 Vt., 176); that plaintiff could recover only by having the patent declared invalid; that for such a purpose exclusive jurisdiction is vested in the federal courts (*Elmer v. Pennel*, 40 Me. 434; *Tomlinson v. Battel*, 4 Abb. Pr. R., 266; ¶ 17 of the Act of Congress of 1836, relating to circuit courts and their jurisdiction in patent right cases; 3 Abb. Nat. Dig., 453, 459, 480); that plaintiff had a full, complete and adequate remedy at law, by an action to recover from defendant the articles turned out in part payment for this patent (4 Johns., 559; 5 id., 193; 6 id., 344; 3 Edw., 109, 129); that no cause of action is alleged in the complaint, the representations therein alleged being at best only matters of opinion, and matters as to which plaintiff could not be deceived, as they were subject to practical test in any blacksmith's shop; and that the evidence did not show any fraud, nor any representations by which any person of ordinary intelligence could be deceived, while it did show that the patent was practically useful.

COLE, J. The first objection taken on the part of the defendant is, that this is really and essentially an action to set aside and avoid a patent, and that a state court has no jurisdiction of the subject matter of the suit. If this were a correct view of the nature and object of the action, the objection to the jurisdiction of the state court might be insurmountable. For we suppose it to be familiar doctrine, that the courts of the

United States have exclusive jurisdiction of all actions arising under the patent laws, and of controversies relating to the validity of patent rights. Sometimes the validity of a patent comes collaterally in question in the state courts, where an action is brought in those courts upon a note given for a patent right, and the defense is that there was no consideration for the notes. This was the case in *Rowe v. Blanchard*, 18 Wis., 441; *Head v. Stevens*, 19 Wend., 411; *Cross v. Huntley*, 13 id., 385. See also the case of *Rich v. Hotchkiss*, 16 Conn., 409. In such cases, the courts, in order to protect the rights of parties and to determine the binding obligation of contracts, are necessarily compelled to inquire whether there was a failure of consideration of the note because the patent right for which the note was given was not useful for any beneficial purpose. It is true, in *Elmer v. Pennel*, 40 Maine, 430, which was an action upon a note given for the conveyance of a patent right, the court even held that proof that the patent was void because it was an infringement of a prior one, was inadmissible as a defense to the note. But, whether the doctrine of this case is more sound and reasonable than that of the authorities which have gone into the question of consideration, and thus incidentally inquired into the validity of the patent, it is not material to determine on this appeal. For this is a suit in equity to rescind a contract of sale of an interest in a patent right on the ground of fraud. The patent may be valid, and yet the plaintiff be entitled to a rescission of the contract on account of fraudulent representations, made by the defendant at the time of sale, of its value and usefulness.

The patent right—a one-fourth interest of which was sold the plaintiff by the defendant for $5,000—was for an improved method of working steel and iron. It satisfactorily appears in the case, that the plaintiff knew nothing about the manufacture of steel and iron in any form, and that he had no knowledge in reference to the usefulness and value of this improved method, except what he learned from the defendant, who was a prac-

tical worker in steel and iron. The plaintiff states in his complaint, among other things, that at the time he purchased this interest, the defendant, with intent to deceive and defraud him, the plaintiff, stated and represented that his process of welding, hardening, refining and tempering steel was perfect in every particular; that there was nothing which could come in competition with it; that it was the result of twenty years' experiment on his part; that he would guaranty that he could by this process toughen any kind of steel, and improve it from fifty to seventy-five per cent. in value; that by his process it would require one-third less steel in the manufacture of elliptic springs than was commonly used for that purpose; that by it he could temper anything made of steel without cracking or warping, and that it was a much cheaper and quicker process than any known for working steel; that he had for twenty years been acquainted with the principal manufactories, in the east, of edge tools and springs, and that anything like his process was not known to any of them; that the use of the thermometer for tempering steel had never been known in this country, except by a man employed in the Elgin watch works, who kept its use a perfect secret; and that the real value of his invention and patent was two hundred and fifty thousand dollars, etc. On the trial, the plaintiff testified that these representations were made to him substantially as set forth in the complaint, and that he relied upon them in making the purchase. His testimony is strongly corroborated in many important particulars by the witness Humphrey Pierce, who drew the contract of sale, and heard the representations of the defendant in regard to the value, usefulness and importance of his method of working steel and iron.

The defendant, in his answer, while he denies that he made any representations with intent to defraud the plaintiff, still does admit that he informed the plaintiff that his improved method of working steel and iron was the result of twenty years' study and experiment; that it was a new and useful in-

Page vs. Dickerson.

vention, and of great value in his opinion; that by his process of working steel and iron, the cracking and warping of steel in manufacturing articles therefrom was in a great measure overcome and prevented; and that articles manufactured from steel by his process would, in his opinion, be worth for actual use from twenty-five to seventy-five per cent. more than articles of the same kind manufactured by the old process. He also admits that he informed the plaintiff that the use of the thermometer in the manufacture of articles from steel was unknown in this country, except to an artizan in the Elgin watch factory, who kept his process a profound secret. He denies that he informed the plaintiff that his invention was worth $250,000, but claims that it is a new and useful method of working steel and iron, and is of great value. On the trial, the defendant testified in substance that he made no representations to the plaintiff to induce him to purchase an interest in the patent right. He stated that he told the plaintiff, before the sale, that he knew nothing of the value of his patent except what others had said about it; and that he requested the plaintiff to see his method tested. He says: "*I told him almost that I would not sell on my representations*, but wanted him to see for himself, and I offered to test it before him, urging delay until he could go and see the patent tested on steel."

Now, when we take into consideration the testimony of the plaintiff in regard to the statements made by the defendant about his patent right, supported, as this testimony is, to some extent, by that of the witness Pierce; when we consider the admissions in the answer, and the halting, undecided manner in which the defendant himself testifies upon the subject that he "*almost*" told the plaintiff that he would not sell on his representations—we feel fully warranted in assuming that the defendant made the representations in regard to the usefulness, value, and importance of his patent right, substantially as set forth in the complaint.

That the representations were most material as affecting the value of the patent right, is a proposition too plain for argument. For if, indeed, it were true that, by the defendant's method of working steel and iron, articles manufactured from steel by this method would be worth for use from twenty-five to seventy-five per cent. more than articles of the same kind manufactured by the old process; if it would cause a great saving of material, and would temper anything made of steel without cracking or warping in the slightest degree; if it was a sure process, it would surely be introduced, when made public, into all the steel and iron manufactories of the country, and soon work a complete revolution in the most important branches of industry. It is very obvious, therefore, that such representations would constitute the strongest inducement to purchase an interest in the patent right for which so much was claimed.

We think, too, that the plaintiff had the right to trust in and rely upon these representations. He knew nothing about the working of steel and iron, and therefore was unable to determine by the results of his own observations and experience, whether the defendant's method was an improvement upon the commonly used processes, or not. The defendant claimed to have practical knowledge upon the subject, had tested his own formulas for welding, refining, hardening and tempering steel, and certainly possessed means of information in respect to his patent right, not within the reach of the plaintiff. The parties were by no means on equal terms, and it was natural that the plaintiff should, under the circumstances, place confidence and trust in the judgment and representations of the defendant in such a matter. What the defendant said about the merits of his patent right, was not a mere matter of opinion—extravagant assertions, which could not mislead a person of ordinary intelligence, as claimed by his counsel. Few persons, except those engaged in the business, have sufficient knowledge upon the subject of working and manufacturing steel, to determine

whether a particular method is useful and superior to the processes generally in use; and they may be excused if, in matters of that kind, they rely somewhat confidently upon the statements of those who have, or claim to have, peculiar skill and knowledge in these branches of industry. The defendant claimed to be an expert in the art of making and working steel, and that he had invented a new and improved method of working those substances. The plaintiff relied upon his representations in regard to the value of his patent, and had a right to rely upon them. But that these representations were untrue, is a fact established in this case by proof absolutely overwhelming and conclusive. The testimony of a great number of experts in the business of working steel and iron was introduced on the trial; and it shows that if the patent right of the defendant is not absolutely worthless, it is really of little practical use or benefit. There is nothing of value in his method of welding, hardening, tempering and refining steel, which was not generally known to skillful and experienced workmen in that branch of business. Many of these witnesses say that they have used the same compounds and chemicals in their processes as are contained in the formulas of the defendant's patent, and that their use is common knowledge among good steel artizans. It is true, the defendant introduced witnesses who testified that they had tried his method, and considered it an useful invention, and valuable for many kinds of work. But the decided weight of evidence is to the effect that it is of very little practical use or benefit. And we are entirely satisfied that it utterly fails to meet the representations made by the defendant at the time of sale, and which induced the plaintiff to enter into the contract. We therefore think the plaintiff is entitled to a rescission of the contract on the ground of fraud. Being entitled to a rescission of the contract, he has, of course, a right to a return of the property—or its value—already paid upon it.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded, with directions to grant the plaintiff the relief above indicated.