Warder and others vs. Baldwin.

WARDER and others vs. BALDWIN.

*February 11 — March 2, 1881.*

ESTOPPEL in pais.    *(1) When mortgagee not estopped to assert his title by
act of mortgagor in possession.    (2) Estoppel must be pleaded.*
OFFICER: DAMAGES.    *(3–4) When damages against officer levying on wrong
property merely nominal.*

1. The owners and mortgagors of a reaper were in possession as such when
the reaper was seized on a writ of replevin against them; but the right
of possession, as against the plaintiff in the writ, was in the mortgagees.
Said reaper was not in fact the one described in the writ, but the officer
took it believing it to be so; the mortgagors in possession remained
silent and did not correct his mistake; but the mortgagees, on learning
of the seizure, notified him of their rights.    *Held,* that they are not es-
topped from asserting their rights by action.

2. An estoppel must be *pleaded* to enable a defendant to avail himself of it upon the trial.

[3. If an officer, as soon as he finds that he has by mistake levied upon the wrong property, tenders it back to the persons from whose possession he took it, leaves it on their premises, and thereafter asserts no claim to its possession, the damages recovered for the taking should be merely nominal, unless it is shown that the plaintiffs have suffered, by reason of the seizure, special damages apart from the mere value of the property.]

[4. In such a case, if no tender be made before the commencement of an action for the taking, etc., yet if the officer then offers to return the property and pay the costs, and it appears that the seizure was made in good faith, and that the property, at the time of such offer, was in as good condition as when taken, the damages should still be merely nominal, except as stated in the foregoing proposition.]

APPEAL from the Circuit Court for *Dane* County.

The case is thus stated by Mr. Justice TAYLOR:

"The action was brought in a justice's court to recover the value of a reaper which it is alleged that defendant unlawfully took from the possession of plaintiffs and converted to his own use. The complaint avers the value of the reaper to be $125, and claims damages to the amount of $150. It also alleges, by way of special damage, that whilst defendant detained the reaper in his possession, plaintiffs had an opportunity of selling it, and did in fact enter into an agreement for its sale, and that, by reason of the unlawful taking and holding of it by the defendant, they were unable to complete the sale, to their damage of $40.

"The defendant's amended answer is, *first*, a general denial; *second*, that defendant, at the time mentioned, was sheriff of Dane county, and that one W. J. Ryan was one of his deputies; that a writ of replevin lawfully issued by a justice of the peace of said county in an action by one Dahling against Taylor and Towne, was placed in the hands of his said deputy; that by such writ he *was commanded to seize the identical property described in the complaint herein as the property of said Dahling*, the plaintiff in said replevin action; that by virtue of said writ his said deputy seized the property described

in the complaint, and made due return thereof; that in such action of replevin judgment was rendered in favor of the said Dahling and against said Taylor and Towne, who appealed from such judgment to the circuit court; and that said deputy was ordered by said court to hold said property pending the perfecting of such appeal. The answer admits that at the time of the service of such writ of replevin by the defendant's deputy, the property was in the possession of the plaintiffs in this action through their agents Taylor and Towne. As a third answer, the defendant alleges that, after his deputy had seized said property by virtue of said writ of replevin, he notified Dahling that he required him to give a bond of indemnity for his protection, and that Dahling failed to do so, and thereupon said deputy offered and tendered to Taylor and Towne, the agents of these plaintiffs, a release of said property in the same place as to location and in the same condition in which it was first seized under the warrant of replevin; and that said agents of the plaintiffs refused to take such surrender, and have continued so to do. Defendant then, by his answer, 'renews the offer to surrender all claim to said property, as made and tendered on the trial of this action, he having at such time paid into court the taxable costs, and four cents as nominal damages.'

"To understand clearly the last clause of the third defense, it must be understood that the amended answer was filed after the action had been appealed to the circuit court; and that in the answer made by the defendant in the justice's court, an offer was made by the defendant to return the property to the plaintiffs or their agents, and he paid into court the taxable costs, $1.75. It is also proper to add that this action was commenced before the appeal had been perfected by Taylor and Towne in the replevin action set out in the answer.

"Upon the trial, the appellants introduced evidence showing that at the time the defendant's deputy seized the reaper by virtue of his writ of replevin in the case of *Dahling v. Taylor*

*and Towne,* a firm of the name of Taylor Bros. owned the reaper in question; and that plaintiffs had a chattel mortgage thereon, given to them by said Taylor Bros. to secure to them the payment of two promissory notes signed by Taylor Bros., amounting to $184.32. The chattel mortgage was in the usual form, allowing the mortgagors to retain possession until the mortgagees should take possession as provided in such mortgage. The provisions as to taking possession by the mortgagees were those usual in such mortgages, for the purpose of making sale of the mortgaged property to pay their debt; and also, if at any time the mortgagees should deem the property or debt insecure, they were authorized to take immediate possession, and sell the same to pay their debt. There does not appear to have been any question made upon the trial as to the ownership of the property by the plaintiffs under their chattel mortgage, or as to their right to the possession thereof as against the defendant or his deputy, at the time he seized the same under his writ of replevin, unless they are estopped from setting up such ownership and right of possession by reason of the acts of the plaintiffs' agents at the time said property was seized by the deputy of the defendant. It seems to have been conceded on the trial, that the reaper in question was not the one described in the writ of replevin under which the seizure was made, and that, by mistake of the deputy and Dahling, this reaper was seized instead of the one which Dahling claimed to own, and for the seizure of which the writ was issued, and which was, in fact, in the possession of Taylor & Towne, or Taylor Bros., at the time the writ was issued and at the time the seizure was made."

The court gave, in substance, the following instructions to the jury:

"If at the time of the service of the warrant of replevin in the action against Taylor and Towne, either of the defendants in that action was notified by the deputy sheriff of the specific property seized, and made no claim for it in behalf of these

plaintiffs, but allowed the officer to proceed with the levy, and he did so proceed on the faith and understanding that the reaper in question was the Dahling reaper, and if the defendants in that action were the agents of these plaintiffs and did not correct the officer in that particular, then plaintiffs are estopped from disputing in this action the right to levy on that particular property. . . . If the officer Ryan had levied on the Dahling machine, he would be protected in this action even though these plaintiffs, and not Dahling, had been the owners of that machine, because his writ of replevin commanded him to seize and hold that identical machine. It is true, the writ did not very specifically describe the machine for which that action was brought and for which the warrant was issued (the description being merely 'one Ohio Champion Reaper'), but I think it described the machine sufficiently for such a writ. . . . If plaintiffs knew at the time of the levy that the officer seized that as the Dahling machine, under circumstances which led him to suppose that it was such, then good faith would require them to state that it was not that machine. . . . It appears that the officer, some time after this, upon hearing that there was some question about this being the machine, went to the agents of the plaintiffs and offered to deliver it up to them, and that they refused to take it. I do not think this is one of the cases in which a party wrongfully taking property can relieve himself by tendering it back. . . . But I do not think that the action of the defendant afterwards in taking the machine from the yard and placing it in the barn deprives him of the estoppel, if you find one upon the other question to which I have referred; because I think he might very well then have moved it under shelter in order to preserve it."

There was a verdict for the defendant; a new trial was refused; and plaintiffs appealed from a judgment on the verdict.

For the appellants there was a brief by *Smith, Rogers & Frank*, and oral argument by *Mr. Rogers:*

The court erred in assuming that the case turned upon the question of estoppel, or that there was any evidence which warranted the application of the law of estoppel. *Norton v. Kearney*, 10 Wis., 443; *Gove v. White*, 20 id., 425; *Church v. Fairbrother*, 38 Vt., 33, 693; *Thrall v. Lathrop*, 30 id., 317, 599; *Moore v. Bowman*, 47 N. H., 494; *Morton's Adm'r v. Hodgdon*, 32 Me., 127; *Connihan v. Thompson*, 111 Mass., 270. See also *Turner v. Coffin*, 12 Allen, 401; *Andrew v. Lyons*, 11 id., 349; 93 U. S., 326; 96 id., 716; 38 Ill., 153; 71 id., 380; *Odlin v. Gove*, 41 N. H., 465. To charge a party with the consequences of a false impression on which another has acted, it must be shown that he knew the impression existed, and the result to which it would lead if not corrected. Herm. on Est., sec. 325; *Hill v. Epley*, 32 Pa. St., 331. The party claiming the benefit of an equitable estoppel must not only be destitute of all actual knowledge of the true state of facts, but of all means of acquiring such knowledge. *Gove v. White*, 20 Wis., 425. In an action of replevin, the officer executing the writ is not destitute of the means of knowledge as to the particular property to be seized, as the statute requires that the property shall be particularly described. R. S., sec. 3731; Wells on Rep., secs. 284–5, 292, 169. If the writ does not give him this information, so as to be his guide, he should refuse to serve it. *De Witt v. Morris*, 13 Wend., 496; *Nolty v. State*, 17 Wis., 668; Wells on Rep., sec. 465. The object of the action being to recover the specific chattel, if the chattel cannot be described or identified the remedy fails. *Ames v. Miss. Boom Co.*, 8 Minn., 472. The officer did not by the levy alone acquire the position or rights of a purchaser for value and without notice. *Ford v. Smith*, 27 Wis., 261. Neither can an officer who has converted property by a wrongful levy, relieve himself from liability by an offer to relinquish the levy. *Livermore v. Northrup*, 44 N. Y., 107; *Caldwell v. Arnold*, 8 Minn., 265. No statements or declarations on the part of Towne or Taylor would bind the plaintiffs, unless

they were, at the time of making the statements, the authorized agents of the plaintiffs, and doing some act within the scope of the agency. *Wheelock v. Town of Hardwick*, 48 Vt., 19; *Emmons v. Dowe*, 2 Wis., 364; *Grant v. Barry*, 9 Allen, 459; *Davenport C. Railway v. Gas Light Co.*, 43 Iowa, 301.

For the respondent there was a brief by *Welch & Botkin*, and oral argument by *Mr. Welch:*

An estoppel *in pais* may be created as effectually by the acts or conduct of the agent as by those of the principal. *Emmons v. Dowe*, 2 Wis., 322. The officer was shown to have acted, throughout, in good faith. Having learned that he had, perhaps, made a mistake, he tendered back the property in the same condition that it was in when he made the levy, and offered to pay all damages incident to the taking; but such offer was refused. No special damages were proven at the trial. Under such circumstances the plaintiffs, even if they are not estopped by the conduct of their agents, could claim only nominal damages. And in such case, after trial and verdict for the defendant, the verdict will not be disturbed. *Portman v. Klemish*, 6 N. W. Rep., 265; *Watson v. Van Meter*, 43 Iowa, 76.

TAYLOR, J. The reaper in controversy in this action was, as appears from the evidence, in the possession of Taylor Bros. at the time the same was seized by the deputy of the respondent, and it was in their possession as owners and mortgagors. There is nothing in the evidence which shows that, as to this reaper, the Taylor Bros. or Towne had any possession of it as the agents of the plaintiffs, for sale or otherwise. It shows nothing further than that the Taylor Bros. were the owners in possession, subject to the mortgage of the plaintiffs. As mortgagors of the property in possession they could not bind the mortgagees by any acts or admissions concerning the title, and, so far as the rights of these plaintiffs were concerned, their positive acts or omissions to act when the deputy sheriff made his seizure could not estop the plaintiffs. But if the

Taylor Bros. had been in possession of this reaper as the agents of the plaintiffs, with full power to sell and dispose of it for the plaintiffs, claiming no title in themselves, we fail to find any evidence in the record in this case which would estop the plaintiffs from claiming title to this reaper as against the defendant. Certainly the plaintiffs cannot be estopped by any acts of their agents except such as were done or omitted in the line of their duty and within the scope of their authority as agents of the plaintiffs. We have certainly very grave doubts whether the agents to sell the plaintiffs' property would be acting within the line of their duty, if, when a sheriff came with a writ to seize their own goods, they directed him to seize the goods of their principals. Such an act would seem to be without the scope of their authority, and not binding upon their principals. If the agents could not bind their principal in such a case by directing the sheriff to seize his goods, their mere silence or omission to act at all when the officer seized the goods of their principals, could not affect their rights. See *Emmons v. Dowe*, 2 Wis., 322, 364, 365; *Kingman v. Graham, ante*, p. 232; *Ford v. Smith*, 27 Wis., 261, 267; *Main v. Bell*, id., 517. In order to create an estoppel in favor of an officer seizing property upon a writ, against the real owner thereof, such owner or his authorized agents must have done or omitted to do something which induced the officer to act differently from what he would have otherwise done, and it must also further appear that the assertion of the real title will jeopardize the rights of the person in whose favor the writ is issued, contrary to equity.

If a seizure of the wrong property upon a writ of replevin were induced by the real owner, that might be a good defense to an action for the mere seizure; but if the owner afterwards notified the sheriff of his title, and demanded the return of the property, the sheriff would be a wrongdoer for not returning it, unless he could show that it would be prejudicial to the rights and interests of the person in whose favor

such property was seized, to permit such return thereof. This seems to be the reason which has induced the courts to hold that under certain circumstances a receiptor of property seized upon a writ cannot be permitted to set up that the property so seized and receipted for was not in fact liable to such seizure. See *Perry v. Williams*, 39 Wis., 339, 343. In that case Justice LYON, in delivering the opinion of the court, says: " It is conceded on all hands that a receiptor who conceals from the officer his ownership of the property, and suffers it to be attached as the defendant's, thereby preventing the officer, perhaps, from attaching other property, is precluded, when sued upon the receipt, from setting up property in himself." And in *Ford v. Smith*, the former chief justice says: " And the proposition, too, that there would be an estoppel growing out of a mere levy made in consequence of such statements, although authorized, when the sheriff was informed of the truth, and notified not to proceed, before sale, is untenable. The sheriff does not, by the levy alone, acquire the position or rights of a purchaser for value without notice."

These cases, we think, establish the position that the real owner is not estopped from asserting his title to property seized by an officer upon a writ, notwithstanding such seizure was induced by his acts, if after such seizure the officer is notified of the real owner's title, and directed not to proceed; unless, as above stated, it be further shown on the part of the officer that it would be prejudicial to the rights of the party in whose favor the seizure was made, to permit the property to be returned to the real owner. After the officer has notice that he has taken the wrong property, he cannot lawfully refuse to return it to the real owner, unless such owner would be estopped from asserting title to the same as against the party in whose favor the writ issued. In this case there is no evidence which establishes any equitable estoppel in favor of Dahling, the plaintiff in the writ of replevin, against these plaintiffs. He was in no way misled by them or by their

agents. He must be supposed to have had knowledge of the identity of the property owned by himself, and the evidence shows that he was the real cause of the mistake made by the sheriff. He pointed out the reaper which the sheriff seized, as the reaper he owned and the one described in the writ, without any misleading by the plaintiffs or their agents. There can be no estoppel of the plaintiffs as against him. Had the sheriff delivered the reaper to Dahling in pursuance of the judgment in the justice's court, there could be no doubt of the right of the plaintiffs to recover of him the value thereof. He could not set up his own mistake as a defense to their action.

But it is unnecessary to pursue this subject further, as the question of estoppel was not put in issue by the pleadings in the case. It appears well settled by the decisions of this court, that an estoppel must be pleaded in order to enable the defendant to avail himself of it on the trial. See *Gill v. Rice*, 13 Wis., 549–554; *Waddle v. Morrill*, 26 Wis., 611; Wait's Law and Practice, 1090. In this case no estoppel was attempted to be set out by the defendant in his original or amended answer, and the second answer of the defendant, which attempts to justify the taking by the deputy of the respondent, virtually admits the title of the plaintiffs, and places the defense solely on the ground that the property in question was the identical property described in his writ of replevin, and he was therefore justified in taking and holding the same on said writ, notwithstanding it was the property of the plaintiffs. No estoppel having been set up in the defendant's answer, and the plaintiffs having excepted to all that part of the judge's charge which submitted that question to the jury, it was error to do so. For these errors the judgment must be reversed.

As there will probably be a new trial in this case, we are constrained to add that, upon the evidence as it appears to us in the record, we think this was a very proper case to apply the

rule laid down by this court in *Churchill v. Welsh*, 47 Wis., 39; and that if the jury find that the officer, as soon as he ascertained that he had made a mistake in seizing the wrong reaper, tendered the same back to the mortgagors from whose possession he took it, and left it on their premises, and thereafter asserted no claim to the possession of the same, such tender should have mitigated the damages to merely nominal, unless the evidence shows that the plaintiffs have suffered other damages beyond the mere value of the reaper by reason of the seizure thereof by the respondent's deputy. If no tender be shown previous to the commencement of this action in the justice's court, the offer then made to return the property and pay the costs should be considered; and if the evidence shows that the seizure was made in good faith by the officer, supposing he was taking the property described in his writ, and he shows that the reaper was in as good condition when he offered in his answer to return the same, as it was when he took it from the plaintiffs' possession, then the damages should be nominal, unless, as said above, the proofs of the plaintiffs show that they have suffered some other damage by the taking and detention, beyond the mere value of the thing taken; and in such case the damages should be limited to the amount sustained beyond such value.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.