.PRATT, Respondent, vs. HAWES and another, Appellants.

*June 5—July 3, 1903.*

*Patents and patent rights: Pleading: Defense: Evidence: Jurisdiction of state courts when infringement of patent is in question: Estoppel.*

1. In an action for the purchase price of a patent right to a machine, of the machine itself, and of certain appliances for the operation of the patented machine, defendants counterclaimed for fraud in representations that the patented machine was not an infringement on a prior patent that plaintiff had sold to other parties. *Held,* that it was error to exclude evidence that defendants purchased in reliance on the representations alleged, and that the patent purchased was in fact an infringement, although such patent actually covered the machine sold.

2. Where a state court has jurisdiction both of the parties, and of the subject-matter as set forth in the complaint, it cannot be ousted of such jurisdiction by the fact that, incidentally to his defense, the defendant claims the invalidity of a certain patent.

3. Where a defendant sets up a counterclaim in his answer, and demands judgment dismissing the complaint, and that the contract on which the action was founded be "canceled, rescinded and annulled," the plaintiff must by his reply plead any estoppel he desires to avail himself of upon the trial.

4. In an action for the price of a patent right and machine manufactured thereunder, the defendants alleged by way of defense, and also by way of counterclaim, that they were induced to purchase by false representations and fraud, and prayed a rescission of the contract. The plaintiff, without pleading such facts, offered in evidence, by way of estoppel, the fact that eight days after the execution of the contract for the patent the defendants sold all their right thereunder. *Held,* even if the evidence had been admitted without objection, or the facts properly pleaded, that it would only have been available to defeat the claim for rescission, and would not have prevented defendants from proving nonperformance, fraudulent representations and fraud on plaintiff's part, and damages sustained in consequence thereof.

'APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

July 23, 1897, the plaintiff and defendants entered into a written agreement wherein and whereby the plaintiff, in consideration of $3,000 to be paid, sold and transferred to the defendants all his right, title, and interest in the affairs and business of the Pratt & Brown Manufacturing Company; also all his right, title, and interest for the United States in and to a machine or machines known as the "Improved Wire and Slat Fabric Weaving Machine;" also all his right, title, and interest for the United States in and to a machine about to be constructed for the manufacture of "knockdown" barrels and boxes, and known as the "barrel machine;" also all his right, title, and interest in and to all the pulleys, belts, shafting, and other machinery then used in the factory of the Pratt & Brown Manufacturing Company in Lansing, Michigan, for the purpose of operating said improved wire and slat fabric weaving machine, except power engine therein, which the plaintiff thereby reserved to himself. Upon the delivery of written assignments of letters patent on said improved wire and slat fabric weaving machine to be issued out of the Patent Office, said letters patent to be delivered by the plaintiff to the defendants and one Edwin B. Brown, of Chicago, then the sum of $3,000 shall be paid to the plaintiff by the defendants in such manner as the plaintiff shall direct. And the plaintiff therein further agreed that upon signing such agreement, and within seven days thereafter, he would proceed to Appleton and assist in setting up and constructing said machine, giving two weeks of his time free of charge therefor—his reasonable expenses during that time to be paid by the defendants; that if he rendered further services he was to receive therefor from the defendants $3 per day; that, in consideration of the premises, he therein agreed immediately to turn over to the defendants and said Edwin B. Brown the existing plans and drawings of the barrel machine, to assist the defendants to the best of his ingenuity and ability in the construction of said barrel machine, and to carry out

his plan for the improvement and construction of the same in all respects, free of charge, and to give the defendants and Edwin B. Brown the first option to purchase any improvements he might thereafter make on either machine or any new machine. And the defendants therein and thereby agreed that, on the delivery to them of the letters patent aforesaid, they would pay to the plaintiff the sum of $3,000, in such manner as he might specify. August 26, 1898, the plaintiff commenced this action to recover the $3,000 mentioned in the contract, alleging full performance of the contract on his part, and, among other things, that he procured the letters patent mentioned in the contract, March 8, 1898, and tendered an assignment thereof to the defendants and Edwin B. Brown, April 21, 1898; that the defendants then and there refused to receive the same, and that he kept the tender good. Defendants answered by way of admissions, denials, and counter allegations, and, among other things, alleged as a defense, in effect, that the plaintiff induced and procured the defendants to make and sign the said agreement by falsely, fraudulently, and deceitfully representing to them that he was the sole inventor of the improved wire and slat fabric weaving machine mentioned; that he had applied for letters patent thereon; that said machine did not and could not conflict with or infringe upon any former machine patented, especially a machine for the like purpose which had theretofore been patented, and sold to a party or parties at Dayton, Ohio—being patent No. 514,496; that the improved wire and slat fabric weaving machine mentioned in the agreement could make the same goods as the Dayton machine, without infringement thereof or liability therefor; that the Pratt & Brown Manufacturing Company of Lansing had already an established and paying business at Lansing, but needed more capital; that he had also invented the machine for making knockdown barrels mentioned; that, relying upon and believing such representations to be true, the defendants

made and entered into the contract upon which this action was brought; that at the time of making such false, fraudulent, and deceitful representations, the plaintiff had not applied for such patent; that he did thereafter, and obtained letters patent No. 600,269, March 8, 1898, but that said patent was not a patent on the machine mentioned in the agreement; that such patent was an infringement on patent No. 514,496, granted by the Patent Office February 3, 1894, and afterwards, and before the making of said agreement, sold to a party or parties at Dayton, Ohio; that the plaintiff, at the time of making such false, fraudulent, and deceitful representations, well knew that said machine was an infringement of said former invention, and that he had no right, in law or otherwise, to manufacture boxes or knockdown barrels; that letters patent No. 600,269 were not for any new and original invention, as plaintiff well knew at the time of such representations, and that such machine is of little or no value, and that the plaintiff had entirely failed to perform the contract on his part, and in consequence thereof the defendants had suffered a large amount of damages, to wit, the sum of $1,400. The answer then, by way of counterclaim, reiterates and realleges such false, fraudulent, and deceitful representations in procuring the defendants to make and sign such agreement, and alleges and claims $1,400 damages in consequence thereof. The plaintiff replied, putting in issue the allegations of the counterclaim. At the close of the trial, the court directed a verdict in favor of the plaintiff for $3,000, and interest from April 26, 1898, amounting in all to $3,381. From the judgment entered thereon in favor of the plaintiff for the amount stated and costs, the defendants bring this appeal.

For the appellants there were briefs by *A. M. Spencer* and *John Bottensek,* and oral argument by *Mr. Bottensek.*

For the respondent there was a brief by *L. B. Gardner,* at-

torney, and *Buell & Hanks,* of counsel, and oral argument by
*Mr. Gardner* and *Mr. C. E. Buell.*

CASSODAY, C. J.    Most of the errors assigned relate to the
exclusion of evidence.

The plaintiff was sworn and examined as a witness in his
own behalf, and gave testimony tending to prove a compli-
ance with the terms of the contract, and, among other things,
that he was the inventor of the improved wire and slat fabric
weaving machine mentioned in the contract, and that he had
procured the patent therefor—No. 600,269—mentioned in
the complaint.    On cross-examination he testified to the ef-
fect that the negotiations relative to that contract had been to
some extent carried on by and between the defendant *Mc-
Namee* and Mr. Daniel Brown (who owned a half interest
in the machine and plant and patent), and that he and Brown
acted together in making sale to defendants, and that he met
the defendant *McNamee* at Brown's office in Chicago the day
on which the contract was signed; that he had no correspond-
ence with the defendants prior to that date; that he did not
know as he could state fully the conversation he had with
*McNamee* at that time.    He was then asked to state such con-
versation as near as he could recollect it.    On objection being
made, the same was excluded.    He then testified, without ob-
jection, to the effect that the improved wire and slat fabric
weaving machine mentioned in the contract, although not
patented until afterwards, was in existence at Lansing when
the contract was made, and was afterwards shipped by him
from Lansing to Appleton, as being in compliance with the
contract, and the one on which a patent had been applied for,
and the one mentioned in patent No. 600,269.    He was then
asked whether the machine so sent from Lansing complied in
all respects with the machine designated in patent No.
600,269, under claims from one to seven inclusive.    On ob-

jection being made, the same was excluded. There were but seven claims in the patent. He was then asked whether the machine so shipped from Lansing was the same machine in all its details and parts as covered by the specifications and claims in that patent. On objection being made, the same was excluded. It appears, and is undisputed, that the plaintiff was the inventor, or one of the inventors, of the Dayton machine covered by patent No. 514,496, granted to him and others February 3, 1894, as mentioned in the answer.

After the plaintiff had rested, the defendants gave evidence as to their negotiations with Brown, who, with the plaintiff, owned the new machine and plant and patent, prior to signing the contract; and, among other things, to the effect that the defendants had learned that another concern at Dayton, Ohio, were making similar goods; that they had previously purchased a machine from the plaintiff for the manufacture of such goods; that Brown had assured them that there was nothing in the new machine that conflicted in any way with the old patent; that the old machine could not make such goods as the new machine would make; that the Dayton parties were working more on another class of goods; that there was no chance for any trouble to come up in the line of infringements or lawsuits, and that it was all clear and open; that the machine they were working on at Lansing was nothing like the former machine, at all, in any way, shape, or manner; that the matter from Dayton was merely a bluff, and there was nothing in it; that the machine would show there was nothing to conflict; that just before the contract was signed, and on the same day, the plaintiff stated to them, in effect, that the machine he had at Lansing was made entirely different, and could manufacture goods that the former machine could not make, and that it did not conflict in any shape or manner; that he would make the alleged claims of conflict with the former machine satisfactory. The defendant *McNamee,* who gave such testimony, was then asked:

"In making this agreement on your part, on what did you rely?" On being excluded, he was then asked: "What was the inducement for you to enter into this contract with Pratt?" That was excluded. Several questions were excluded as to the operation of the knockdown barrel machine constructed by the plaintiff at Appleton. The defendants called a witness who testified to the effect that he was a patent lawyer and expert in construing specifications and claims of patents for inventions and in determining questions of the infringement of such patents. He was then requested to state what education and experience he had had tending to qualify himself to testify as an expert on questions of the infringement of such patents, and upon different articles made under letters patent. The court rejected such testimony on the ground that it was immaterial, for the reason that the proofs offered by the plaintiff failed to show either a warranty or fraud in obtaining the contract, and therefore the question as to what work the machines were capable of doing, or as to whether the later machine was an infringement on the former one, was immaterial, and so the same was excluded on that ground. Thereupon counsel for the plaintiff withdrew his objection and the witness stated facts tending to show him qualified to testify as an expert. The witness was then allowed to testify to the effect that he had examined letters patent No. 514,496, and also No. 600,269, and had examined both of the machines therein described, including the Lansing machine then present in court, and which was then identified as such, and was then asked to state whether or not the construction of that machine was shown and described in patent No. 600,269. On objection being made, the same was excluded. Thereupon the two following questions were put to the same witness, and they were both excluded: "I wish you would look at No. 514,496. Are the twister heads on this machine now here covered by letters patent 514,496? Are the twister heads on the Lansing machine here in court sim-

ilar to these—the same form of twister heads described in the patent No. 514,496 ?" He was then allowed to testify to the effect that the twister heads on the Lansing machine then in court were not *the same twister heads* as those described in and covered by letters patent 600,269; that they were different. The court thereupon made the following statement:

"I think, after examining the letters patent—I think it appears, *prima facie,* that the latters patent No. 600,269 are a substantial compliance with the terms of the contract. There may be modifications and variations in this machine; there may be a great many—some have already been pointed out—but the letters patent themselves are what is described in the contract for an improved slat machine, etc.; so I do not think there is any question about the fact that the letters patent do substantially comply with the terms of that agreement; so that question is out of the case. And this rules out all expert testimony."

Thereupon the court excluded the following question put to the same expert witness:

"Please to compare the construction of the invention covered by these two patents, and also consider the claims of patent 514,496, and state whether the construction of patent number 600,269 is an infringement upon the claims of patent 514,496."

The unprinted record discloses the exclusion of numerous other offers of testimony on the part of the defendants. Some of such rulings may be justified. But it is obvious that the defendants were precluded from proving the defense alleged in the answer. The defense so alleged is to the effect that the defendants were induced to sign the contract by false and fraudulent representations as to existing facts, and especially the representation that the Lansing machine was not an infringement of the prior patent covering the Dayton machine. The plaintiff claimed to be the inventor of both machines. He had previously sold all his right to the Dayton invention to parties living at that place. He would naturally be supposed to know whether the Lansing machine infringed the

prior patent covering the Dayton machine. The defendants had the clear right to prove that such representations were made, that they were induced to sign the contract because they relied upon such statements and believed them to be true, and that such representations were false, and they had sustained damage by reason thereof.

Some of the rulings of the court seem to have been on the theory that if patent No. 600,269 actually covered the Lansing machine, then the plaintiff had substantially complied with the terms of his contract, and that it was immaterial whether it was procured by fraud or not; and that the question whether that machine was an infringement of patent No. 514,496 could not be determined in this action. The law is to the contrary. The supreme court of the United States has recently held:

"When a state court has jurisdiction both of the parties and the subject-matter as set forth in the declaration, it cannot be ousted of such jurisdiction by the fact that, incidentally to his defense, the defendant claims the invalidity of a certain patent." *Pratt v. Paris G. L. & C. Co.* 168 U. S. 255, 260, 261, 18 Sup. Ct. 62.

It is there said by the court:

"We are referred to but one case directly in point which favors plaintiff's contention—*Elmer v. Pennel,* 40 Me. 430—in which, in a suit upon a note given for a patent right, proof that the patent was void as an infringement upon a prior one was held not to be admissible without that fact having been determined by a court of competent jurisdiction. There is, however, an overwhelming weight of authority to the contrary."

The court then cited numerous cases from Massachusetts, New Hampshire, Connecticut, New York, Pennsylvania, Indiana, Wisconsin, Illinois, and Missouri, and said:

"In all these states the principle seems well established that any defense which goes to the validity of the patent is available in the state courts. In these cases the validity of the patent was attacked upon different grounds, but we per-

ceive no distinction in the principle involved. The patent may be void because the invention was well-known before, or because it is useless or immoral, or because it is an infringement upon other prior patents, and it is no objection to the jurisdiction of the state court that the question of validity may involve the examination of conflicting patents or the testimony of experts. It is the fact of its invalidity, and not the reasons for it, that is material. The cases are so numerous and uniform that a bare reference to them is all that is necessary."

Among the cases there cited from this court are *Page v. Dickerson,* 28 Wis. 694, and *Rice v. Garnhart,* 34 Wis. 453. To these may be added *Rowe v. Blanchard,* 18 Wis. 441; *Croninger v. Paige,* 48 Wis. 229, 4 N. W. 106; *Fuller & J. Mfg. Co. v. Bartlett,* 68 Wis. 73, 31 N. W. 747; *Herman v. Gray,* 79 Wis. 182, 48 N. W. 113; *Valley I. W. Mfg. Co. v. Goodrick,* 103 Wis. 436, 78 N. W. 1096. In the earliest of these cases, in an action on a note given for the assignment of a right under a patent, it was held by this court that the maker of the note might defend by showing that the invention was practically useless, and hence that there was a want of consideration. In another of the cases cited it was held that the state court has "jurisdiction of actions where the contract of sale of a patent right is sought to be rescinded because procured by fraudulent representations of the vendor as to the value and usefulness of such right." *Page v. Dickerson, supra.* So, in an action brought in a state court to recover the contract price of a patent right, it was held by this court that, for the purpose of showing a want or failure of consideration, the defendant might prove that the patent was void because the patentee was not the first inventor of the patented article. *Rice v. Garnhart, supra.* In another it was held, in a suit by the vendor for the purchase price of a patent, that the vendee might defend on the ground that the article sold was in fact an infringement of a patent. *Croninger v. Paige, supra.* The other cases in this court cited have

more or less bearing upon the question. See, also, *Excelsior W. P. Co. v. Pacific B. Co.* 185 U. S. 282, 286, 22 Sup. Ct. 681; *McMullen v. Bowers,* 102 Fed. 494. But it is unnecessary to multiply adjudications from state courts, since the question is so firmly established by the highest authority on federal questions.

2. Counsel claim that the defendants are estopped from making such defense, or recovering on their counterclaim, for the reason that on July 31, 1897—eight days after the execution of the contract—the defendants sold all the property and rights they had secured from the plaintiff, by virtue of the contract, to the Appleton Ventilated Wooden-Ware Company. There are two reasons why this contention cannot prevail. The general rule is that an estoppel must be pleaded in order to enable a party to avail himself of it upon the trial. *Warder v. Baldwin,* 51 Wis. 450, 459, 8 N. W. 257; *Borkenhagen v. Paschen,* 72 Wis. 272, 39 N. W. 774; *Bank of Antigo v. Ryan,* 105 Wis. 37, 80 N. W. 440. It is not a case where there was no opportunity to plead the facts constituting an estoppel. The answer of the defendants contains a counterclaim covering the whole question of false representations and frauds, and demands judgment dismissing the complaint, and that the "contract be canceled, rescinded, and annulled." The only reply is a denial of each and every allegation therein contained; except as specifically admitted, qualified, or explained in the complaint. The record discloses the fact that the evidence of such sale and transfer by the defendants was admitted, against objection. *Evens & Howard F. B. Co. v. Hadfield,* 93 Wis. 665, 68 N. W. 468. Besides, had it been admitted without objection, or been properly pleaded, it would only have been available to defeat the claim for the rescission of the contract. It could not have prevented the defendants from proving nonperformance of the contract on the part of the plaintiff, nor that the defendants were induced to sign the contract by the false and fraudulent representa-

tions on the part of the plaintiff, and had sustained damages in consequence thereof. We are forced to the conclusion that there was a mistrial in this case.

*By the Court.*—Judgment of the circuit court is reversed, and the cause is remanded for a new trial.