### APPLIANCE CORP. v. SPEED QUEEN CORP.

#### Nos. 10245, 10246.

United States Court of Appeals
Seventh Circuit.

Heard Jan. 18, 1951.

Decided Feb. 6, 1951.

R. B. Graves, Sam A. Casey, Graves, Casey & Potter, and J. M. Potter, all of Wisconsin Rapids, Wis., for appellant.

Rickard H. Lauritzen, Malcom K. Whyte, Victor M. Harding, Jr., all of Milwaukee, Wis., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff, Appliance Corporation of America, a Wisconsin corporation (hereinafter referred to as ACA), brought this action against the defendant, Speed Queen

Corporation, a Delaware corporation, to recover liquidated damages upon a contract bearing the date June 19, 1947, as modified December 20, 1947. The contract was made with Barlow & Seelig Mfg. Company, which subsequent to the execution of the contract changed its name to Speed Queen Corporation. The complaint stated two causes of action. The defendant answered the complaint, admitting all the factual allegations, but set up an affirmative defense which the parties concede raised a legal issue. The defendant also filed a counterclaim for the recovery of certain amounts paid to the plaintiff under the contract declared upon. Defendant's asserted rights under its counterclaim rest upon the same legal issue as its affirmative defense to the action stated in the complaint.

The court, on motions of the plaintiff, entered summary judgment in its favor on its first cause of action and dismissed defendant's counterclaim. As to plaintiff's second cause of action, the court retained jurisdiction for further proceedings. From the judgment thus entered, defendant appeals.

The 1947 contract upon which the suit is predicated, as well as a contract between the same parties made in 1946 for which the former was substituted, are attached to the complaint and made a part thereof. They are both long, detailed and complicated. For the purpose in the beginning of showing the legal issue raised by the defendant both by its affirmative defense and its counterclaim, it appears only necessary to state that both contracts related to the manufacture of automatic washing machines, and that plaintiff represented that it was the owner or assignee of certain designated and described letters patent or applications for patents in each of which the invention disclosed related to a washing machine. Some twenty-five of such inventions are listed in the 1947 contract, and defendant was granted a non-exclusive, non-transferrable license under all of such patents and pending applications to manufacture and sell washing machines. Defendant by its answer and counterclaim raised the legal issue that there was an implied term or condition of the contract that the washing machines when manufactured according to the specifications of the various enumerated patents "would be efficient, workable and salable," but that, although they were manufactured by the defendant in accordance therewith, they had no "practical or commercial value" and were without "utility" as a clothes washing machine, and as a result there was a complete failure of "consideration for the obligations assumed by defendant," and that it was thereby "relieved of the obligation" sought to be enforced by the plaintiff.

Plaintiff's cause of action as well as the judgment appealed from rest upon a single obligation imposed upon the defendant by the terms of the contract. Except as they bear or throw light upon such obligation, we think it unnecessary to relate the multitude of other obligations imposed upon the defendant, including the payment of substantial royalties as licensee under plaintiff's patents. Preliminary, however, to a consideration of the provision relied upon, a brief statement appears to be material. The 1946 contract, an elaborate, written agreement, ostensibly was designed to cover all phases of the business relationship entered upon by the parties. As noted, plaintiff owned numerous patents, applications for patents and was the licensee of patents owned by others, all relating to washing machines. Defendant for many years had been engaged in the business of manufacturing such machines. By this contract the parties agree to collaborate in developing a washing machine under principles disclosed in plaintiff's patent rights. It was agreed that when an approved design had been developed each party would participate in the manufacture of the various parts going into the machine. In February, 1947, the parties agreed on an approved design and also a monthly quota of machines to be manufactured. Six hundred seventy-seven machines were manufactured by defendant under this contract, delivered to the plaintiff and paid for by it. Five hundred sixteen of these machines had been turned over by plaintiff to one of its franchise dealers. This 1946 contract was terminated by plaintiff on May 21, 1947, because of

failure of performance on the part of defendant.

Under the 1947 contract, the manufacture of the machines was placed solely in the hands of defendant. Under that contract, defendant agreed to and did take over a large inventory of machinery, tools and fixtures, including one hundred fourteen machines which had been manufactured by it and delivered to plaintiff under the 1946 contract. Defendant also agreed to pay plaintiff for certain other supplies and materials previously purchased by plaintiff at defendant's request. All such items were actually taken over and paid for by defendant in an amount near to $100,000.00.

This brings us to paragraph 23 of the contract, entitled "ACA's Inventory Of Parts." Herein is set forth the obligation upon which plaintiff's suit was predicated and upon which it obtained a favorable judgment. The provision recites that plaintiff. has on hand inventories of fabricated parts acquired at a cost to it of $196,371.69, and that a list of such parts had been furnished by plaintiff to defendant. The latter agreed to purchase the inventoried parts at the rate of not less than $5.00 for each machine manufactured by it until it had paid plaintiff a net sum of $146,915.90. The paragraph further provided that in case this net amount was not paid on or before June 20, 1948, the difference between the total sums paid and the total amount agreed upon should be paid by the defendant in twelve equal monthly installments, the first of which was to be paid July 15, 1948. The paragraph also provided that upon termination of the contract by either of the parties, the unpaid portion of $146,915.90 should be immediately due and payable to the plaintiff. Defendant on August 27, 1948 gave plaintiff a notice of termination.

This amount which defendant thus became obligated to pay was reduced by three payments, made on March 22, 1948, July 16, 1948 and February 2, 1949, in the total amount of $69,000.72. The balance of $77,915.18, the defendant refused to pay, and it was this balance, together with interest thereon, for which plaintiff was awarded the judgment appealed from.

Defendant's position in this court rests solely on the premise that it was required by the contract to manufacture a washing machine in accordance with the specifications of the patents and patent rights enumerated in the contract, and that there was an implied warranty on the part of the plaintiff that when such machines were so manufactured they would be efficient, workable and salable. And the fact (admitted for the purpose of plaintiff's summary motion) that machines manufactured in accordance with the patent specifications had no practical or commercial value and were without utility demonstrates that the contract is void for lack of consideration. Several Wisconsin cases, as well as those from other jurisdictions, are cited in support of this position. Rowe v. Blanchard, 18 Wis. 441; Herman v. Gray, 79 Wis. 182, 48 N.W. 113; Pratt v. Hawes, 118 Wis. 603, 95 N.W. 965; Cosden Oil & Gas Co. v. Moss, 131 Okl. 49, 267 P. 855; Patch v. Solar Corp., 7 Cir., 149 F.2d 558.

While some of these cases furnish meager support for defendant's theory, they obviously are without application unless we agree with the premise upon which the theory is designed to rest. In connection with defendant's theory, it should be kept in mind that plaintiff did not sue defendant as licensee of its patents for royalties which defendant was obligated to pay for their use. The suit, as noted, is to recover on defendant's obligation to pay for plaintiff's inventory purchased by defendant, and defendant's counterclaim is to recoup the amount which it had paid on such obligation. Defendant meets this schism in its theory with the contention that the inventory of parts which it purchased from the plaintiff were to be used in the manufacture of washing machines in accordance with the patent specifications and that inasmuch as the machines which it manufactured in accordance therewith were without utility, it necessarily follows that the inventory of parts were likewise useless and of no value to it.

We think and shall attempt to show that defendant was not required either by the 1947 contract or its predecessor to manufacture machines according to the

patent specifications. The 1946 contract recites in a "Whereas" provision that the plaintiff "has designed and developed an automatic household washing machine (hereinafter called 'Machine'), a model of which has been delivered" by plaintiff to defendant "for study purposes." The contract, after enumerating the patents which defendant was licensed to use, provides:

"Definitions. As used herein:

"(a) the term 'Machine' as used herein shall mean an automatic household washing machine wherein textile materials are washed and rinsed and water is extracted therefrom in a single container and of the particular type embodied in the model delivered by ACA to Barlow & Seelig heretofore, with such modifications and changes as may from time to time be agreed upon in writing by the parties hereto."

It will be noted that this definition is broad in its terms, and we hardly suppose it would be contended that it was descriptive of a patentable invention. In fact, it can hardly be said to describe any machine other than the model which the plaintiff had delivered to the defendant. And it is the machine as thus defined which is referred to throughout the contract. More than that, it evidently was the intent of the parties that they both should attempt to improve on the model which plaintiff had furnished. In fact, plaintiff agreed "to continue to conduct research, development, and engineering work on machines coming hereunder [meaning no doubt the machine as defined], and from time to time, as may be mutually agreed upon, to furnish Barlow & Seelig drawings of improvements to such machines and drawings and working models of new models of such machines." And Barlow & Seelig agreed "to have its engineering and manufacturing personnel collaborate with ACA, and without charge to ACA, in amending and modifying the aforesaid engineering drawings to include alterations in ways mutually agreed upon, * * * so as to improve the machines manufactured hereunder." More than that, the contract provided that the parties should own the patent rights upon improvements made by each respectively, and that

any patents obtained upon improvements made by the defendant might be used by it "without any royalty charges" for the duration of the agreement. It was agreed that any patents obtained by either of the parties on improvements to the machine would be licensed to the other. Also, the contract authorized the plaintiff to determine which of its patents, if any, were applicable to the machines manufactured by defendant.

These matters, in the absence of an express provision to the contrary, forcibly indicate that the defendant was not obligated to manufacture a machine in accordance with the patent specifications. On the other hand, they strongly indicate that what the parties had in mind was the manufacture of a machine within the broad language as it was defined in the contract and with both parties free to make such improvements as they saw fit, each with the privilege of protecting such improvements by acquiring patents thereon in their own right. And this is not to read out of the contract its licensing provisions or defendant's obligation to pay royalties. What the parties apparently intended was that each should have a free hand in the improvement and development of a satisfactory washing machine, and for that purpose defendant was licensed to employ the teachings of plaintiffs' patents. Only if it did so was it obligated to pay royalties.

As already noted, plaintiff under the terms of the 1946 contract served a notice of termination upon defendant for failure of performance, and this brings us to the contract of 1947, involved in the instant suit. This latter contract recites that it is a substitute for the 1946 contract, and what we have said with reference to the 1946 contract insofar as it relates to defendant's contention that it was obligated to manufacture washing machines in accordance with plaintiff's patent specifications is in the main applicable to the 1947 contract. Again, the contract defines the term "Machine" in language even broader than that contained in the previous contract. We think it unnecessary to set forth this definition, but this contract, as the previous one, plainly shows that it was the machine thus defined con-

cerning which the parties contracted. Royalties were required to be paid only upon machines "covered by one or more claims" of plaintiff's patents and not upon all machines manufactured by the defendant. This contract, as did the previous one, recognized the right of both parties to make patentable improvements on the machines to be manufactured, and to become the beneficiary of such improvement. And in case patents were obtained upon improvements through the joint efforts of the parties, they were to be jointly owned.

While it might have been contemplated that defendant would manufacture machines in accordance with the specifications of the patents for which it was granted a license, it clearly was not obligatory upon it to so do. Undoubtedly it acquired that right, but its obligation was to manufacture machines in accordance with the definition, incorporated in the contract, together with such improvements as the ingenuity of either might devise. To interpret the contract as requiring the defendant to manufacture machines in accordance with the patent specifications would render meaningless the definition of the machine concerning which the contract was made. More than that, the contract with reference to the inventory of parts which defendant purchased from plaintiff specifically provided that defendant should be liable therefor whether such parts were used "in the manufacture of machines hereunder or when and as any of said parts are scrapped by Barlow & Seelig." Thus, it was left optional with the defendant whether it would use such parts in the manufacture of machines, which is a further indication that the parties did not contemplate machines manufactured exclusively under the patent specifications.

■ We are unable to agree with the premise upon which defendant presents its case, and it follows that the theory embodied in its affirmative defense as well as its counterclaim must be rejected. It also means that the cases which it relies upon in support of such theory are without application and need not be discussed. But we need not rest our decision entirely upon this view for the reason that if we assume

for the purpose of discussion that the machines were to be manufactured according to the patent specifications and that when so manufactured they possessed no utility, yet we think the contract would not fail for a want of consideration. As already shown, the parties became involved in a controversy concerning their rights and liabilities under the contract of 1946, and plaintiff had served notice of its desire to terminate. The 1947 contract provided, "It is agreed that each party hereto hereby waives any and all claims against the other for alleged past defaults of any and all prior agreements between the parties hereto." The relinquishment of such rights and liabilities, so we think, furnished adequate consideration for the substitute contract then entered into.

More than that, prior to making the contract of 1947, the defendant had the same opportunity as the plaintiff to learn and to discover the merits or demerits of the machine which it agreed to manufacture. It was not groping in the dark or wandering in the wilderness in search of a satisfactory washing machine any more than was the plaintiff. And as already noted, prior to the execution of the 1947 contract, defendant had actually manufactured six hundred seventy-seven machines which it had delivered to plaintiff, and it is a fair and perhaps irresistible inference that it either knew or should have known as much about the machine at the time it entered into the contract as it did when it allegedly made discovery that the machine was useless. There is no intimation of any fraud or misrepresentation practiced by the plaintiff. In fact, the record discloses quite plainly that the parties were on an equal footing and dealt with each other at arms' length. As was said by the Supreme Court of Wisconsin in J. H. Clark Co. v. Rice, 127 Wis. 451, 106 N.W. 231, 237, "if the defendant had full opportunity to investigate the operation of the device and there was no concealment nor fraud on the part of the plaintiff, then it became the duty of the defendant to investigate and form his own opinion as to the value and utility of the device, and he could not rely upon mere expressions of opinion made by the

officers or agents of the company." The same court, in Derfus v. Stoelting Bros. Co., 223 Wis. 205, 270 N.W. 40, in a suit to recover royalties on a license agreement granting the defendant a right to manufacture and sell the machine described in the grantor's patent, held that the relinquishment by the licensor of his right to manufacture and sell his patent device constituted sufficient consideration for the licensee's promise to pay for its use. In so holding, the court stated, 270 N.W. at page 41, "The appellant received the right to manufacture and market the machine. The contract fixed the obligations of the parties. A sufficient consideration was given. The relinquishment by one party of a right to manufacture and sell a patented device, in consideration of another party's promise to pay money therefor, amply meets all requirements in that particular."

We conclude that the District Court properly allowed plaintiff's motion for summary judgment and also its motion dismissing defendant's counterclaim. Therefore, the judgment appealed from in both of its aspects is

Affirmed.