## In re SHEFFIELD et al.

(Circuit Court, D. Kentucky. December 1, 1894.)

1. CONSTITUTIONAL LAW—TAXATION—PATENT RIGHTS.

The exclusive right to make, use, and vend an invention or discovery, granted by letters patent of the United States, cannot be taxed by a state.

2. SAME.

A statute of Kentucky declared that all itinerant persons, vending patent rights, should be deemed peddlers, and imposed a license tax upon peddlers, which, for vendors of patent rights, was double the amount required of others. *Held*, that this was a taxation of patent rights granted by the United States, and so unconstitutional and void.

This was a petition for a writ of habeas corpus by C. P. Sheffield and S. O. Edmunds, alleging that they were illegally restrained of their liberty by the jailer of Simpson county, Ky. The jailer made return to the writ that the petitioners were in his custody upon a surrender by their bail in a prosecution for selling patent rights without payment of license tax, in violation of a statute of Kentucky.

R. S. Brown, for relator.
G. T. Finn, for respondent.

BARR, District Judge. The material question which arises on the return of Davidson, jailer of Simpson county, is whether or not the statute of Kentucky which requires the payment of a license tax and the obtaining of a license from the county court of a county by peddlers before they can sell or offer for sale a patent right, or any territory covered by such patent right, which has been granted by the United States, is constitutional. It appears in this case the petitioners have paid a license tax and obtained a license from the county court of Simpson county to sell a patent article known as "Animal Releasing Devices" in said county. But they have not paid the license tax or obtained a license from said county court to sell or offer for sale the patent right itself or any part of the territory covered by said patent. The petitioners are being prosecuted for selling or offering for sale this patent right without having paid said license tax to thus sell and offer for sale said patent right. They gave bond for their appearance to the next term of the court, and have been surrendered by their bail to the jailer who had them in custody at the time of the service of the writ of habeas corpus, and who has produced them in the court with his return of the cause of their detention. The 4216th section of the Kentucky Statutes declares that "all itinerant persons vending lightning rods, patent rights or territory for the sale, use or manufacture of patent rights, * * * shall be deemed peddlers." Section 4219 declares that the county court of each county shall have exclusive jurisdiction to grant ped-

dlers' licenses, and that the applicant for license shall prove in open court, by at least two credible witnesses, that the applicant is a person of good moral character. Section 4225 fixes $100 as the license tax for peddlers for the entire state, and one-fourth thereof for each county when license is issued for one county; but declares vendors of patent rights, or territory for the sale of patent rights or patent articles, shall pay double that sum.

The provision of section 4219 is, we think, the exercise of the police power of the state, but the other provisions are clearly the exercise of the power of taxation. Thus the question arises whether "the exclusive right to make, use, and vend the invention or discovery" of a patentee or his assignee, which is granted by the United States, can be taxed by a state. The right to make, vend, and use an invention or discovery by the inventor or discoverer exists independent of the authority of the United States. But the exclusive right to make, use, and vend an invention or discovery is given to the patentee and his assignees by the United States. This right of exclusion is a species of incorporeal property which is valuable. The right, without the exclusion, would not be and is not such a right as could be taxed as property. The invention or discovery, so long as it remains with the inventor or discoverer, is ideal merely; and it is only when the invention or discovery takes shape, and results in some material thing, it can be called property and taxed as such. This right of exclusion is an incorporeal right, which is valuable, and may be considered personal property. The Kentucky statute recognizes this, and therefore seeks to tax the patent right (the right of exclusion) by requiring for its sale the payment of a license tax. This license tax is double that required for the sale of goods, merchandise, and other property. The question is not whether the state of Kentucky can tax a patented article or thing as other property is taxed, or tax the dealing in such articles or things as dealings in other property are taxed, by requiring the payment of a license tax. Hence the decision of the supreme court in Webber v. Virginia, 103 U. S. 344, and the principle therein announced, have no application to the case under consideration, nor has the decision in Patterson v. Kentucky, 97 U. S. 501, any application. In the Webber Case the license tax was upon the sale of the article manufactured under a patent, and it was decided that there was a discrimination in the tax required for the sale of articles manufactured out of the state of Virginia and those manufactured in that state. For the sale of the latter no license tax was required, and this was held unconstitutional. In that case the supreme court, by Justice Field, say:

"The right conferred by the patent laws of the United States to inventors to sell their inventions and discoveries does not take the tangible property in which the invention or discovery may be exhibited or carried into effect."

And again, in discussing the exercise of the police power of a state, the court say:

"A patent for the manufacture and sale of a deadly poison does not lessen the right of a state to control its handling and use. The legislation respecting the articles which the state may adopt after the patents have expired, it

may equally adopt during their continuance. It is only the right to the invention or discovery—the incorporeal right—which the state cannot interfere with."

These quotations show, while the present question was not before the court, Justice Field had in his mind and drew a distinction between the tangible property which is the fruit of an invention or discovery and the incorporeal right,—the exclusion of others from making, using, or vending an invention or discovery. The Case of Patterson was where "an improved burning oil," which had been patented, did not come up to an inspection required by a state statute, and had been condemned as unsafe for illuminating purposes, and its sale for such purposes prohibited. The supreme court, affirming the Kentucky court of appeals, held this statute was a proper exercise of the police power of the state, and that the patent did not give the patentee the absolute right of sale without regard to the safety to others or the exercise of the general police power of the state. This was the view of the Kentucky court, who said:

"The discovery or invention is made property by reason of the patent, and this right of property the patentee can dispose of under the law of congress, and no state legislation can deprive him of this right; but when the fruits of the invention or the article made. by reason of the application of the principle discovered, is attempted to be sold or used within the jurisdiction of a state, it is subject to its laws, like other property." 11 Bush, 312.

But it is insisted that this license tax is a tax on the business of the person who peddles. Yet it must be a tax on the sale of the patent rights sold, and this is made clear by the statute itself, which makes the license double that for the sale of goods, merchandise, and other property. Machine Co. v. Gage, 100 U. S. 678. Thus the question must be, can a state tax, or authorize a county or city to tax, a right—an incorporeal right—which is granted by the United States, and which, under the constitution, can alone be granted by the United States? We think that question must be answered in the negative, under the principle settled in the case of McCulloch v. State of Maryland, 4 Wheat. 316, and the many subsequent cases. In the case of Weston v. Charleston, 2 Pet. 449, the court held that a tax on stock of the United States held by an individual citizen of a state is a tax on the power to borrow money on the credit of the United States, and cannot be levied by or under the authority of a state. In that case Chief Justice Marshall took occasion to state the principle upon which the previous case of McCulloch v. State of Maryland was decided, and said:

"The question decided in that case bears a near resemblance to that which is involved in this. It was discussed at the bar in all its relations, and examined by the court with its utmost attention. We will not repeat the reasoning which conducted us to the conclusion thus formed; but that conclusion was that 'all subjects over which the sovereign power of a state extends are objects of taxation, but those over which it does not extend are, upon the soundest principles, exempt from taxation.' 'The sovereignty of a state extends to everything which exists by its own authority or is introduced by its permission,' but not 'to those means which are employed by congress to carry into execution powers conferred on that body by the people of the United States.' 'The attempt to use' the power of taxation on

the means employed by the government of the Union, in pursuance of the constitution, is itself an abuse, because it is the usurpation of a power which the people of a single state cannot give."

The court said in that case that "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operation of the constitutional laws enacted by congress, to carry into execution the powers vested in the general government." See, also, Dobbins v. Erie Co., 16 Pet. 435, and the National Bank Cases, in which the shares in these banks are taxed because of the provision of the national banking law passed by congress. 2 Black. 620; 2 Wall. 200; Van Allen v. Assessors, 3 Wall. 573; First Nat. Bank v. Kentucky, 9 Wall. 358; Bradley v. People, 4 Wall. 459.

But, without reviewing the many cases in which the authority of a state to regulate the manufacture, use, and sale of patented rights and patented articles are discussed and decided, we think the correct doctrine is that the grant of patent rights is given by the United States subject to the exercise of the police power of the several states of the Union, and that the patented articles are subject to the taxing power of the several states, if there be no discrimination in such taxation as between other property in the state and the patented article or thing. But the patent right itself, i. e. the right to exclude all others from the manufacture, use, or sale of the invention or discovery, which is a grant by the United States, cannot be taxed by a state. If the authority to tax such a right of exclusion exists at all, the limitation upon its exercise must depend alone upon the constitution and laws of the several states, and such an authority is utterly inconsistent with the grant of the patent right which is by the constitution of the United States given exclusively to congress. This view is fully sustained by the case of Ex parte Robinson, decided by Justice Davis, and reported in 2 Biss. 313, Fed. Cas. No. 11,932, and the case of State v. Butler, reported in 3 Lea, 222, and is entirely consistent with the opinions in Webber v. Virginia and Patterson v. Kentucky, supra, and the decision of Judge Cooley in People v. Russell, 49 Mich. 617, 14 N. W. 568. In this case the state of Kentucky has not only levied a tax upon the inchoate right (patent right) which has been granted under the authority of the United States, but has made a discriminating tax by requiring the payment of a license tax in double the amount required for peddling goods, merchandise, and other property. We conclude the statutes of Kentucky, under which the petitioners, Sheffield and Edmunds, are prosecuted and imprisoned, are unconstitutional and void. They (Sheffield and Edmunds) are therefore imprisoned without lawful authority, and should be released from the custody of said Davidson, jailer of Simpson county, and it is so ordered.