ROBERTS, Appellant, vs. DECKER and another, Respondents.

*November 21—December 11, 1903.*

*Limitation of actions: Pleading: Definiteness: Inconsistent defenses: Recording act: Occupancy: Actual notice: Riparian rights: Milldam in stream: Deeds: Construction: Adverse possession: Cotenants.*

1. Where an answer, in pleading the statute of limitations, specifically refers to the ten-year statute by sections, the fact that possession for twenty years is alleged instead of ten, as against a demurrer *ore tenus*, is not misleading and does not vitiate the plea.
2. In an action of ejectment against D. and B., allegations of the answer that D. entered into possession with S. in 1888 under claim of title founded on two certain deeds, and that since that entry D. and S., and the defendants, as purchasers and grantees from them, have been continuously in possession under claim of title founded on said deeds, is *held* sufficient as against a demurrer *ore tenus*, although no deed is specifically alleged to have been executed to B.
3. Claims of title under the ten-year and twenty-year statute of limitations are not inconsistent. They may be pleaded as separate defenses in the same answer under the code.

4. Where the evidence shows that the grantee in a deed immediately took possession thereunder but did not record his deed, and that he and his grantees continuously remained in possession thereafter, such possession is actual notice of their rights, whatever they may be, to subsequent purchasers from the first grantor; and such unrecorded deed is admissible in evidence as against such subsequent purchasers.

5. A deed of land bounded by a millpond which is the mere enlargement of a river passes the land to the thread of the stream. *Lawson v. Mowry*, 52 Wis. 219, and *Fox River F. & P. Co. v. Kelley*, 70 Wis. 287, distinguished.

6. R. C. P., the owner of a milldam and waterpower on a stream, and of the land on both sides thereof, conveyed to J. N. P. and S. a fifteen-rod strip covering the west bank opposite the dam for some distance above and below, together with 1,500 inches of water under a five-foot head, and the grantees covenanted to defray half of the expense of maintaining the dam so as to keep up a five-foot head of water. It appeared that 1,500 inches of water under a five-foot head was more than half of the ordinary flow of the river. At the time of said conveyance there was a sawmill on the east side of the stream. Four months later R. C. P. conveyed to F. C. W. an undivided one third of the land on the east side of the river (the sawmill property) "together with the equal undivided one third of the sawmill situated on the above-described real estate and the equal undivided one third of the dam, waterpower, privileges and appurtenances thereunto belonging or in any wise appertaining." The next year R. C. P. made a conveyance to F. C. W. containing the same description as that in the last mentioned deed, except that the fraction one sixth was used instead of one third. F. C. W. conveyed to G. using the same description but substituting therein the fraction one half. Subsequently R. C. P. conveyed to S. and S. to G. the other half of the same described property. Thereafter G. conveyed to J. W. W. the land on the east side of the river "together with the sawmill situated on the above-described real estate and the equal and undivided one half of the dam, waterpower, privileges and appurtenances thereunto belonging or in any wise appertaining," and the property covered by such conveyance vested by mesne conveyances in defendants, who also by mesne conveyances acquired the title to the 1,500 inches of water under a five-foot head "together with all rights and privileges in and to the waterpower dam and flowage," etc., conveyed to J. N. P. and S. Several years later G. quitclaimed to plaintiff the undivided one half of said dam, together with the waterpower, etc., thereunto belonging. *Held:*

(1) The deed from R. C. P. to J. N. P. and S. conveyed the land to the middle of the stream, and insured to the grantees the use of the specified amount of water at all times, whether one half of the flow equaled that amount or not.

(2) The deeds from R. C. P. to F. C. W. referred to the east half, and not to the whole, of the dam and waterpower, and conveyed to him an undivided one half interest therein.

(3) The deed from G. to J. W. W. conveyed to the latter all of the former's interest in the dam and power, as well as in the sawmill.

7. In such a case, undisputed evidence that in 1874 G. was dispossessed of the entire property on the east side of the river by J. W. W., claiming under his deed, and that thereafter J. W. W. and his grantees had been in actual, exclusive adverse possession claiming title under such deed, and that until 1901 no one made any claim of title to the dam or waterpower, is *held* conclusive proof of adverse possession under the ten-year statute of limitations.

8. Where the person in possession of land under claim of title to the whole thereof has no knowledge that another, whose rights have never been acknowledged, claims an interest therein as his cotenant, it is not necessary that the possessor, in order to acquire title by adverse possession, should bring home to the person claiming cotenancy actual knowledge of the adverse character of his possession.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action of ejectment to recover an undivided half of a milldam, water power, and flowage rights which the plaintiff claims to own as tenant in common with the defendants. The dam is situated on the Embarrass river, at the village of Embarrass, Waupaca county, and is known as the "Palmer Dam." The answer denies any title in the plaintiff, and attempts to set up both the ten-year and the twenty-year statute of limitations as separate defenses, as follows:

"(2) And for a second and separate defense to this action these defendants allege: First. That on the 11th day of July, 1888, *E. F. Decker* and *C. B. Smith* entered into possession of said premises described in plaintiff's complaint, under claim of title, as tenants in common with John N. Palmer

.and the said *E. F. Decker* and C. B. Smith and John N. Palmer and Mark Palmer claiming the whole of the prem-.ises or property and dam described in the complaint, founding such claim upon written instruments as being a conveyance of said dam described in the complaint, to-wit, a deed executed by Damon Brightman and wife to *E. F. Decker* and C. B. Smith on the 11th day of July, 1888, under their hands and seals, and duly witnessed by two subscribing witnesses, and by said grantors duly acknowledged, whereby the said Damon Brightman and wife granted and conveyed in fee simple to the said *E. F. Decker* and C. B. Smith, their heirs and assigns, forever, the undivided one half of the dam and property and water-power privileges described in the complaint, and the land and sawmill property adjacent thereto, said deed containing the usual full covenants, and which said deed was duly recorded in the office of the register of deeds for Waupaca county August 1, 1888, in volume 70 of Deeds, p. 348; and said *E. F. Decker* and C. B. Smith founding such claim upon a written instrument as being a conveyance in part of said dam from John N. Palmer and wife and Mark Palmer to *E. F. Decker* and C. B. Smith. Said deed was executed on the 11th day of July, 1888, under the hands and seals of the said grantors, duly witnessed by two sub-.scribing witnesses, and by said grantors duly acknowledged, whereby the said John N. Palmer and wife and Mark Palmer and wife granted and conveyed in fee simple to the said *E. F. Decker* and C. B. Smith, their heirs and assigns, forever, the said dam described in the complaint, said deed containing the usual full covenants, which said deed was duly recorded in the office of the register of deeds for Waupaca county, August 1, 1888, in volume 70 of Deeds, on page 352. Defendants further allege that the conveyance above described from Damon Brightman and wife to *E. F. Decker* and C. B. Smith, and the conveyance from John N. Palmer and wife and Mark Palmer and wife, above described, to *E. F. Decker* and C. B. Smith, did vest the whole title of said dam and water and flowage described in the complaint in the said *E. F. Decker* and C. B. Smith. Second. That ever since said entry, and for more than twenty years immediately preceding the commencement of this action, these defendants, as purchasers and grantees of said premises from *E. F. Decker*

and C. B. Smith, and those under whom they claim as aforesaid, have been in the actual, continued occupation and possession of the said premises adverse to and exclusive of every other right, under claim of title founded upon such deeds above described. Third. That during the whole of said time since said entry the said premises, and the whole thereof, have been occupied and in possession of these defendants and those under whom they claim, and said premises have been used as a water power for a sawmill, and part of the time for a gristmill, and the possession of these defendants and their grantors from the time of such entry above set forth has been open and notorious and exclusive, and said premises have been inclosed. Fourth. And, by virtue of the premises above set forth, these defendants allege that the plaintiff is barred from having and maintaining this action by the provisions of sections 4211, 4212, and 4215 of the Revised Statutes, now here pleaded as a defense to this action.

"(3) For a third and separate defense, these defendants allege: First. That neither the plaintiff above named, nor his ancestor nor predecessor nor grantor, was or has been seised or possessed of the said premises described in said complaint, nor any part thereof, within twenty years before the commencement of this action. Second. That these defendants, their predecessors and grantors, have held the same premises, and been in actual continued possession and occupation thereof, and of the whole thereof, exclusive of every and any other right, for more than twenty years immediately preceding the commencement of this action. Third. And that, during the twenty years last before the commencement of this action, the said premises, and the whole thereof, have been protected by a substantial inclosure, and have been usually improved, and have been used for furnishing water for driving purposes, for hydraulic power, for running a sawmill and gristmill, and for such use as a hydraulic dam is ordinarily used. That the said dam has been kept in repair at all times during said twenty years, and been partially rebuilt—all done by these defendants, and by those under whom they hold. Fourth. That this action is therefore barred by the provisions of sections 4207, 4213, and 4215 of the Revised Statutes, which these defendants now here plead as a defense to this action."

On the trial before a jury the plaintiff relied upon record proof of title, and demurred *ore tenus* to the second alleged defense above quoted, and also moved that the defendants be required to elect whether they would stand on the second or third defense, both of which motions being overruled, exceptions were taken.

It appeared by undisputed evidence that both parties derived title, so far as they have any record title, from one Rufus C. Palmer, who owned the land on both sides of the river prior to 1855, at which time he built the dam in question. The river at this point runs north and south, and the dam extends across it from east to west, forming a millpond or enlargement above. At the east end of the dam is a sawmill, which was built by Palmer at some time prior to 1860. At the west end a gristmill was built prior to 1869, which, however, was destroyed by fire some years later.

At the close of all the evidence the court directed a verdict for the defendants, and from judgment thereon the plaintiff appeals.

For the appellant there was a brief by *Guernsey & Cole,* attorneys, and *James G. Flanders,* of counsel, and oral argument by *Mr. Llewellen Cole* and *Mr. Flanders.*

For the respondents there was a brief by *Wallrich, Dillett & Eberlein,* and oral argument by *C. F. Dillett.*

WINSLOW, J. The plaintiff's first contention is that the ten-year statute of limitations is not sufficiently pleaded. The claim is that the plea does not show that the defendants went into possession under an instrument in writing, and further that it is bad because it alleges twenty years' possession, instead of ten, as required by secs. 4211, 4212, Stats. 1898. The claim that the allegation of twenty years' possession, instead of ten, in any way vitiates the plea, if otherwise good and not misleading, is so obviously untenable that it is unnecessary to discuss it. If the defendants have had twenty

years' possession, they have certainly had ten. *Morgan v. Bishop,* 61 Wis. 407, 21 N. W. 263. The other claim is also untenable. While the answer is not a model of pleading, it certainly alleges that the defendant *Decker* entered into possession with one Smith in 1888 under claim of title founded upon two certain deeds, and that since that entry *Decker* and Smith, and the defendants as purchasers and grantees from them, have been continuously in possession under claim of title founded on said deeds. Thus it appears by the plea that *Decker* took possession under, and has always claimed possession under, a written instrument; and, while no deed is specifically alleged to have been executed to *Beedle,* he is described as a purchaser and grantee of the premises from *Decker* and Smith. As against a demurrer *ore tenus* we cannot but regard the answer as sufficient, especially in view of the fact that it specifically refers to the ten-year statute of limitations by sections, and so could not be in any way misleading.

The trial court was also right in refusing to require the defendants to elect between the two defenses. Under the Code a defendant may plead as many defenses as he has, even though they be based on inconsistent legal theories, unless they be so repugnant in fact that proof of one disproves the other. *South Milwaukee B. H. Co. v. Harte,* 95 Wis. 592, 70 N. W. 821. This court has held that an allegation of adverse possession for twenty years is not inconsistent with an allegation of actual ownership by deed. *Gilman v. Brown,* 115 Wis. 1, 91 N. W. 227. Certainly, if these allegations be not inconsistent, claims of title under the ten and twenty-year statute of limitations cannot logically be called inconsistent.

But one ruling in the admission of evidence is complained of, and this question will be first treated. One of the intermediate deeds in the defendants' chain of title, executed September 8, 1871, was never recorded; and the plaintiff ob-

jected to its introduction for the reason that his immediate grantor, John W. Goodwin, was a subsequent purchaser in good faith without notice, he having received and recorded deeds covering the whole dam in August and September, 1872, and the plaintiff having received and recorded his deed in August, 1901, and hence the unrecorded deed could not affect either Goodwin or the plaintiff, under the provisions of sec. 2241, Stats. 1898. The answer to the objection is that the evidence conclusively showed that the grantee in the unrecorded deed immediately took possession of the property thereunder, and that he and his subsequent grantees, including the defendants, continuously remained in possession thereafter; thus giving actual notice to Goodwin and to the plaintiff of their rights, whatever they might prove to be. *Prickett v. Muck,* 74 Wis. 199, 42 N. W. 256.

Coming to the merits of the case, we find that the facts were substantially without dispute. As to the record title, both parties trace their titles to Rufus C. Palmer, who originally owned the land on both sides of the river, and erected the dam in question, and built and operated a sawmill on the east side prior to 1860. There are two chains of title from Rufus C. Palmer—one covering the land on the east side of the river, and one the land upon the west side of the river— and the question as to the record title to the dam and water power depends upon the construction to be given to several of the deeds in these chains of title. The first deed was executed by Rufus C. Palmer October 8, 1866, to J. N. Palmer and W. H. Stacy, and covered a strip of land on the west side of the river fifteen rods in width along the river, beginning above and extending some distance below the dam, together "with 1,500 inches of water under a five-foot head," and containing a covenant by the grantees to defray half the expense of keeping up the dam so as to keep up a five-foot head of water. For convenience, this deed will be called deed No. 1. J. N. Palmer and Stacy built a gristmill on the west side in

or about the year 1869, and thereafter operated it by power from the dam. By subsequent conveyances Stacy's interest in the property described in the last-mentioned deed was vested in Mark L. Palmer, and on July 11, 1888, J. N. and Mark L. Palmer executed a deed to *E. F. Decker* and C. B. Smith, conveying no land along the river, but simply "1,500 inches of water under a five-foot head, together with all rights and privileges in and to the water power dam and flowage situated at the village of Embarrass, Wisconsin, known as the Palmer dam." The first deed, covering land upon the east side, was executed by R. C. Palmer February 22, 1867, to F. C. Webster (four months after the first conveyance on the west side, above mentioned), and conveyed an undivided one third of the land on the east side of the river (or the sawmill property), "together with the equal undivided one third of the sawmill situated on the above-described real estate and the equal undivided one third of the dam, water power, privileges and appurtenances thereunto belonging or in any wise appertaining." On the 28th of April, 1868, R. C. Palmer made another conveyance to Webster, containing the same description as that in the last-named deed, except that the fraction one sixth was used in the description, instead of the fraction one third; thus by the two deeds placing the title to an undivided one half of the property described in Webster, and retaining one half himself. These deeds will be referred to as deeds Nos. 2 and 3, respectively. Thereafter Webster conveyed his interest to John W. Goodwin, using the same description as in deeds 2 and 3, substituting therein the fraction one half, and R. C. Palmer conveyed to W. H. Stacy and W. H. Stacy to Goodwin the other half of the same described property. On April 7, 1874, John W. Goodwin conveyed to John W. and Celia White the land on the east side of the river, "together with the sawmill situated on the above-described real estate and the equal and undivided one half of the dam, water power, privileges and appurte-

nances thereunto belonging or in any wise appertaining." The property covered by this last deed became vested by mesne conveyances in *E. F. Decker* and C. B. Smith July 11, 1888, and Smith conveyed an undivided half interest in the dam and power to defendant *Beedle* December 5, 1899. On the 10th of August, 1901, John W. Goodwin quitclaimed to the plaintiff the undivided one half of the dam known as the "Palmer Dam," "together with all water power, privileges and appurtenances thereunto belonging or in any wise appertaining;" also all claims, demands, and causes of action growing out of the use of water from said dam. Whether Goodwin had any title to convey to the plaintiff when he executed this last-named deed depends primarily upon the construction to be given to deeds Nos. 1, 2, and 3, and the deed from Goodwin to the Whites.

The plaintiff's contention is that deed No. 1 conveyed no part of the stream or dam, but stopped at the water's edge, and that deeds Nos. 2 and 3 conveyed one half of the whole dam and power (subject to the use of 1,500 inches under deed No. 1), and that hence, when Goodwin purchased the remaining Palmer half from Stacy, he became the owner of the whole dam and power, and, having deeded but one half thereof to the Whites, he still retained one half, which he sold to the plaintiff.

Examining these claims in order, we must first consider what passed under deed No. 1. This deed, in terms, conveys a fifteen-rod strip, covering the west bank of the river opposite the dam, and extending some distance both above and below. The well-established principle is that a deed conveying the bank of a stream will be presumed to convey to the middle or thread thereof, unless such presumption be overcome by actual reservation in the deed, or by a clearly expressed intention in the deed to limit the conveyance short of that point. *Norcross v. Griffiths,* 65 Wis. 599, 27 N. W. 606. It is said that this principle does not apply to the case

of a grant bounded by the shore of a mill pond, because that is an artificial body of water; and reference is made to *Lawson v. Mowry*, 52 Wis. 219, 9 N. W. 280, and *Fox River F. & P. Co. v. Kelley*, 70 Wis. 287, 35 N. W. 744, as supporting this contention. These were cases of grants upon the banks of artificial canals, and have little or no application to a mill pond which is a mere enlargement of a river. The supreme court of Massachusetts, in a very similar case, held that a deed of land bounded by a mill pond created by an artificial dam, through which the thread of the stream has always been apparent, passes land to the thread of the stream. *Phinney v. Watts*, 9 Gray, 269. And we approve the doctrine. But it is said that the grant of 1,500 inches of water indicates clearly the intention to limit the rights of the grantee in the dam, and rebut the presumption that one half of it was intended to be conveyed. We do not find ourselves able to agree with this contention. It appears that 1,500 inches of water under a five-foot head was more than one half of the ordinary flow of the river. It may well be that the intent of this clause was simply to insure to the grantees the use of 1,500 inches of water at all times, whether one half of the flow equaled that amount or not. This seems as reasonable a construction as any other. So we do not find any clear intention expressed in the deed to limit the conveyance to the bank of the stream, either from this clause, or the covenant to defray one half of the expense of repairs to the dam; and hence the deed must be construed as conveying to the middle or thread of the stream, and thus covering one half of the dam.

This deed being so construed, there can be little doubt as to the proper construction of deeds Nos. 2 and 3. It is true that the words in these deeds are ambiguous, and might be construed as conveying one half of the whole dam and one half of the whole power, or as conveying one half of that part of the dam and power appertaining to the sawmill prop-

Roberts v. Decker, 120 Wis. 102.

erty, i. e., one half of one half; but when we consider the circumstances under which they were made, namely, the fact that the west half. had already been conveyed, also that the grantor retained one half of the sawmill, so that, if he conveyed one half of the whole dam and power, he would retain no power to contribute to the operation of the mill, we can entertain no doubt that these deeds, together with the following deeds, by which the whole title to the sawmill property and power appertaining thereto came into the hands of Goodwin, must be construed as referring to the east half of the dam and power, and not to the whole dam and power. Therefore, when Goodwin conveyed to the Whites, he owned simply this east half, and this brings us to the construction of the last-named deed. By this deed Goodwin conveyed the sawmill and land, and "one half of the dam, water power, privileges and appurtenances thereunto appertaining." The language is substantially the same as that used in the previous deeds which have been construed as referring to only the east half of the dam, and the question is whether the same construction must be applied to this deed. If it must, then Webster still retained one half of one half of the dam and power, and this interest has passed to the plaintiff, unless cut off by adverse possession.

It is said that it would be absurd to place a different construction upon substantially the same language in two deeds in the same chain of title, but this does not seem to be necessarily true. The facts and circumstances surrounding and following the transactions may be so different as to necessitate a different construction, and such seems to us to be the case here. When the Webster deeds were executed, as we have seen, the grantor still retained an interest in the mill, and would presumably desire to retain corresponding interest in the dam and power, but when Goodwin's deed was executed he was divesting himself of all interest in the mill and lands; he had no further use for dam or power; and, further-

more, it appears without dispute that his grantees went into possession of the whole property, and operated the entire dam, claiming to own it, repairing and collecting the revenues thereof, without claim or suggestion on the part of Goodwin of any right therein, for about twenty-seven years. Under these circumstances, it seems clear to us that the Goodwin deed to the Whites must be held to have conveyed Goodwin's entire interest in the dam and power.

But were the conclusion otherwise upon this question, the result of the action would be the same, for the reason that the undisputed facts show that the defense of adverse possession under the ten-year statute has been conclusively proven. The evidence shows, without dispute, that Goodwin has been dispossessed of the entire property since the execution of his deed to the Whites, in 1874, and that since that time the defendants and their grantors have been in actual, exclusive, and adverse possession, claiming title under deeds, and that during that whole time, and until some time in the year 1901, neither Goodwin, nor any one under him, ever made any claim of title to the dam or water power. No more complete case of exclusive and hostile possession on the one side, and abandonment of claim on the other, could well be proven.

But it is said that the defendants and their grantors were cotenants of Goodwin, and that they cannot claim to hold adversely until they have brought home to him actual knowledge of the adverse character of their possession. The difficulty with this contention is that there never was a time when the defendants or their grantors knew that any cotenancy on the part of Goodwin was claimed, and never acknowledged any such right. The rule as stated in *Sydnor v. Palmer*, 29 Wis. 249, is that where a tenant in possession, having once acknowledged the title of another cotenant, seeks to turn his possession into an adverse holding, he must bring home actual knowledge of his adverse holding to the cotenant, unless his exclusive holding has been so long continued as to

justify a finding of acquiescence on the part of the cotenants. *Saladin v. Kraayvanger,* 96 Wis. 180, 70 N. W. 1113. There has never been any acknowledgment of Goodwin's cotenancy here. The defendants and their grantors have apparently never known or suspected that any such claim existed. If it in fact existed prior to 1901, Goodwin kept the fact carefully within his own breast. To hold that the defendants must give notice of their adverse holding to one of whose claims they were in utter ignorance, and whose rights they had never acknowledged by word or deed, would be absurd.

*By the Court.*—Judgment affirmed.