J. H. CLARK COMPANY, Appellant, vs. RICE, Respondent.

*January 30—March 20, 1906.*

*Pleadings: Inconsistent defenses: Joinder: Patents and patent rights: State regulation: Statutes: Constitutional law: Evidence: Hearsay: Prejudicial error: Fraudulent representations: Officers of corporations: Witnesses: Competency: Depositions: Trial: Production of testimony: Discretion: Special verdict: Form; Instructions to jury.*

1. Under sec. 2657, Stats. 1898, a defendant may plead as many defenses and counterclaims as he may have, even though they are based on inconsistent legal theories, and hence he may join a defense of fraud for which rescission is sought and a counterclaim for payments made, with a counterclaim for breaches of the same contract.

2. Ch. 438, Laws of 1903, amending ch. 268, Laws of 1901 (requiring all promissory notes or other evidence of indebtedness, taken or given for any patent, patent right, or interest therein, to have written or printed thereon *in red ink* the words: "The consideration for this note is the sale of a . . . patent, patent right . . . or interest therein," prescribing a penalty for failure so to do, and making such note or other evidence of indebtedness nonnegotiable), is an invasion of sec. 4898, R. S. of U. S., and unconstitutional and void because in conflict with sec. 8, art. I, Const. of U. S.

3. In an action on a note given for the purchase of a patent right, one defense was that defendant was induced to give the note by the false and fraudulent representations of plaintiff. The special verdict, as originally submitted to the jury, contained the question: "Did the defendant, at the time he talked with Mr. R. [one of plaintiff's officers] relative to an extension of the time of payment of the note, have knowledge of all facts and circumstances which he now claims to know?" which, before rendition of the verdict, was withdrawn from the jury. The evidence, stated in the opinion, was not undisputed. *Held,* that the court's ruling was error.

4. In an action on a note given for a patent right, in which the defendant pleaded as a defense the false and fraudulent representations of the plaintiff inducing the purchase of the patent right, statements made on the part of plaintiff to other persons, not in the presence or hearing of defendant, some of them long

after the execution of the note, are not admissible to prove bad faith and an actual intent to deceive on the part of the plaintiff.

5. Newspaper articles, circulars, pamphlets, etc., many of them never seen by defendant, and some of them not in print until after the making of the note, are likewise inadmissible.

6. The admission of evidence of similar transactions between plaintiff and other persons in no way involved in the litigation, offered to show fraudulent intent, is prejudicial error.

7. Representations, to be fraudulent, must relate to a present or past state of facts.

8. Relief as for deceit cannot be obtained for nonperformance of a promise looking to the future.

9. A mere expression of opinion or belief as to the value or quantity of an article sold, if so intended and understood, is not a representation of a fact, and, though false, does not amount to fraud.

10. Whenever there is doubt as to whether a statement is a mere expression of an opinion or a statement of fact the question must be determined by the jury or court.

11. False representations, to be actionable, must be relied upon by the purchaser, and be of such character and made under such circumstances as to justify the purchaser in relying upon them.

12. The president, secretary, or other principal officer of a corporation is, in effect, a party to the action, and his examination taken under sec. 4096, Stats. 1898, so far as competent, is independent evidence in the case, notwithstanding his presence in court. It is otherwise in the case of an employee.

13. No abuse of discretion in rejection of testimony can be predicated on the limiting of the respective parties to fifteen witnesses on the question of the utility of a device covered by a patent.

14. It is contrary to the spirit of the statute governing special verdicts for the court to submit several questions together, and instruct the jury that they are so submitted because the instructions given applied equally to each, and then submit the same number of other questions, each of which was dependent upon the answer to one of such first questions.

15. In an action on a note given for a patent right one question submitted as part of the special verdict was whether, at the time of giving the note, the patented device had any practical utility for the purposes for which it was patented, and an instruction on that subject, that the jury must confine their "inquiry to the purposes named in the patent and those only," without stating the full purpose of the patent, is *held* misleading, although the jury were allowed to take the patent to their room and construe it for themselves.

16. In such case it was error to refuse to instruct the jury that they must answer such question "Yes," unless it was established that the device was of no practical value; that if the device was of any practical utility then they should answer the question in the affirmative.

17. In an action on a note given for a patent right it was alleged that the patent was of no utility and that the plaintiff induced the defendant .to give the note by false and fraudulent representations, and it was *held* error to refuse a requested instruction to the effect that if defendant had full opportunity to investigate the operation of the device, and there was no concealment or fraud on the part of the plaintiff, then it became the duty of the defendant to investigate and form his own opinion as to the value and utility of the patented device, and that he could not rely upon mere expression of opinion made by the officers and agents of plaintiff.

APPEAL from a judgment of the circuit court for Columbia county: B. F. DUNWIDDIE, Judge. *Reversed.*

It appears from the record and is undisputed that the plaintiff and the defendant entered into a written agreement dated November 30, 1903, wherein and whereby the plaintiff made, constituted, and appointed the defendant its agent in and for Ramsey county, Minnesota, for the sole purpose of selling, vending, and putting within said county the fuel-saving device of the plaintiff and by it manufactured, owned, and controlled by letters patent of the United States, and of recommending and selecting subagents for the plaintiff in and for any county of the United States, and whereby the plaintiff agreed to deliver to the defendant or such subagents on board cars said device upon payment of prices therein named, which were not to be more than $10 for each furnace attachment and $7.50 for each stove attachment. Said contract contained numerous other agreements not necessary here to mention, and recited that the same was made in consideration of $1,500 to the plaintiff in hand paid. Such payment was made by the defendant ·giving to the plaintiff two judgment notes, each for $750 and interest. Upon the note falling due June 1, 1904, the plaintiff entered judgment against

the defendant for the amount thereof, with interest and costs, June 28, 1904. Upon the petition verified by the defendant July 6, 1904, and a proposed answer verified by the defendant on the same day, the trial court, on September 16, 1904, opened such judgment and allowed the defendant to answer and defend against the payment of said note. That answer as amended alleged three defenses: (1) To the effect that said two judgment notes were obtained by the plaintiff from the defendant by false and fraudulent representations and warranties upon which the defendant relied; (2) that there was a want of consideration for the giving of said notes; (3) that the giving of said notes was against public policy in failing to comply with ch. 438, Laws of 1903. Such amended answer also alleged two counterclaims: (1) In effect reiterating the facts so stated by way of defense, and alleging that the defendant was damaged by such false representations and warranties in the sum of $1,550; and (2) in effect reiterating the facts so stated by way of defense, and therein tendering back to the plaintiff all rights and interests under said contract, and thereby electing to rescind said agreement by reason of such alleged false and fraudulent representations and warranties. The plaintiff, by way of reply to the first counterclaim, among other things, alleged in effect that after the note in suit became due the defendant requested and procured from the plaintiff an extension of the time for the payment thereof with knowledge of all the facts; that the contract was made by defendant after he had investigated the merits of the device, and then ratified by him with full knowledge of all the facts; and to the second counterclaim the plaintiff replied to the effect that the plaintiff did not own the other note and had no knowledge of the ownership of the same, and that the defendant requested and procured an extension of the time of payment of said note with full knowledge of all the facts.

At the close of the trial the jury returned a special verdict to the effect (1) that the patented device known as the "Clark

Fuel Saver" did not, at the time of the giving of the note in question, have any practical utility for the purposes for which it was patented; (2) that the *J. H. Clark Company,* its officers or agents, before the giving of the note in question did represent to the defendant in substance that said Clark fuel saver was a practical and successful device; (3) that such representation was false; (4) that the *J. H. Clark Company,* its officers or agents, did represent to the defendant in substance that said device could be successfully used upon all stoves and furnaces for heating purposes; (5) that such representation was false; (6) that the *J. H. Clark Company,* its officers or agents, before the giving of the note in question did represent to the defendant in substance that said fuel-saving device · could be used successfully with all kinds of fuel; (7) that such representation was false; (8) that the *J. H. Clark Company,* its officers or agents, before the giving of the note in question did represent to the defendant in substance that by the use of said device at least fifty per cent. of the fuel would be saved over and above the amount required to produce the same heat without the use of said device; (9) that such representation was false; (10) that the *J. H. Clark Company,* its officers or agents, before the giving of the note in question did represent to the defendant that the said Clark fuel saver was very valuable; (11) that such representation was false; (12) that the *J. H. Clark Company,* its officers or agents, before the giving of the note in question did represent to the defendant that said plaintiff had thoroughly tested said device and that such tests had proved all that was claimed for it; (13) that such representation was false; (14) that such representation or representations were made to the defendant for the purpose of inducing him to enter into said contract and give the note in question; (15) that the defendant, in giving the note in question, did rely on said representations; (16) that the defendant was induced by said representations to give the note in question; (18) that the

company's officers or agents making such representation did know or ought to have known that such representations were false; (20) that the defendant did expend in attempting to sell the device in the county purchased by him and in operating the same the sum of $50. Thereupon the trial court made findings of fact and conclusions of law to the effect (1) that the plaintiff was, prior to November 30, 1903, a Wisconsin corporation and the owner of said letters patent of the device known as the "Clark Fuel Saver," and that both parties were located at Portage; (2) that the plaintiff's business was as therein stated; (3) that the contract between the parties and the notes given by the defendant to the plaintiff were as above stated; (4) that by the agreement made and the transaction had between the plaintiff and the defendant the plaintiff sold, transferred, and assigned to the defendant an interest in a patent or patent right; that the said note in suit and the other note given at the same time were given for an interest in a patent or patent right; that neither of said notes had written or printed thereon in red ink or otherwise, "The consideration for this note is the sale of a patent or patent right, or interest therein," nor did either of said notes have thereon in red ink or otherwise any other words of similar import or meaning, or any words indicating what the consideration of said notes really was; (5) that the note in suit matured June 1, 1904; that within a few days thereafter, the defendant *Rice* inquired of one of the plaintiff's officers as to whether the time of payment thereon could be extended, but the defendant did not, at the time of making such inquiry or at any other time, promise to pay said note or any part thereof, except the promise made in and by the note itself; that the defendant, at the time he made such inquiries, did not have full knowledge as to all the facts or as to his rights in the premises. Upon such special verdict and findings and conclusions of law, and pursuant to the order of the trial court, it was, on motion of the attorneys for the defendant, adjudged that the complaint

in this action be and the same was thereby dismissed, with costs and disbursements in favor of the defendant, taxed at $350.49. From that judgment the plaintiff appeals.

*Daniel H. Grady,* for the appellant.

For the respondent there was a brief by *H. E. Andrews,* attorney, and *John A. Aylward* and *Rufus B. Smith,* of counsel, and oral argument by *Mr. Andrews* and *Mr. Aylward.*

CASSODAY, C. J. 1. Error is assigned because the court refused to compel the defendant to elect as to the remedy upon which he would rely under the pleadings. The statute authorized the defendant, by answer, to set forth "as many defenses and counterclaims" as he might have, "whether they be such as were formerly denominated legal or equitable, or both." Stats. 1898, sec. 2657. Under this section it has been held that "a defendant may plead as many defenses and counterclaims as he may have, even though they are based upon inconsistent legal theories. With a defense of fraud for which he seeks a rescission of the contract sued on, and a counterclaim for payments made thereon, the defendant may, therefore, join a counterclaim for breaches of such contract, if held binding." *South Mil. B. H. Co. v. Harte,* 95 Wis. 592, 70 N. W. 821; *Roberts v. Decker,* 120 Wis. 102, 108, 97 N. W. 519, 521. In this last case it was said that "under the Code a defendant may plead as many defenses as he has, even though they be based on inconsistent legal theories, unless they be so repugnant in fact that proof of one disproves the other." In the case at bar there is no such repugnancy. Besides, the defendant recovered nothing on either of his counterclaims. The judgment merely dismissed the complaint with costs.

2. Error is assigned because the court found, as a matter of law, that the note sued on in this action was given in violation of ch. 438, Laws of 1903, and hence was void. That

act was amendatory of ch. 268, Laws of 1901, and declared, in effect, that all promissory notes and other evidences of indebtedness, taken or given for any patent, patent right, or interest therein, should have written or printed thereon *in red ink* the words "The consideration for this note is the sale of a . . . patent, patent right . . . or interest therein," as the case might be, and declared that "any person who" should sell a patent, patent right, or any interest therein, without complying with such statute, should "be liable to a penalty equal to the face of the note so taken," and that "all notes or other evidences of indebtedness taken" as required by the provisions of said statute should "be nonnegotiable, and be subject to all the defenses in the hands of an innocent holder that the same would have if not transferred." It appears from the undisputed evidence, as well as the findings of the court, that the written agreement between the parties constituted a sale or assignment of an interest in a patent or patent right; and that neither of the notes taken therefor had written or printed thereon, in red ink or otherwise, the words required by the act, nor any such indorsement in words of similar import. These things being so, it is obvious that if the act in question is valid, then, by taking the notes without such indorsement, the plaintiff became "liable to a penalty equal to the face" of the notes so taken. This court has repeatedly held that a positive requirement of a statute and a penalty imposed for noncompliance render the transaction, if contrary to the statute, void. *Troewert v. Decker,* 51 Wis. 46, 8 N. W. 26; *Howe v. Ballard,* 113 Wis. 375, 89 N. W. 136; *Julien v. Model B., L. & I. Asso.* 116 Wis. 79, 91, 92 N. W. 561; *Brown v. Gates,* 120 Wis. 349, 351, 97 N. W. 221, 98 N. W. 205; *Pearson v. Kelly,* 122 Wis. 660, 664, 100 N. W. 1064. If the act in question is valid, then the conclusion of the trial court is correct, that the note in suit was taken in violation of the statute and is therefore void. The important question in the case is whether ch. 438, Laws

of 1903, is a valid enactment. All must concede that Congress has the power "to promote the progress of science and useful arts by securing for limited times to authors and inventors· *the exclusive right* to their respective writings and discoveries." Sec. 8, art. I, Const. of U. S. The federal statute de-- clares:

"Every patent or any interest therein shall be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States." Sec. 4898, R. S. of U. S. [U. S. Comp. St. 1091, p. 3387].

The precise question presented is whether the act of our state legislature interferes with the rights thus given by federal authority. It seems to be well settled:

"Where, by the application of the invention or discovery for which letters patent have been granted by the United States, *tangible property comes into existence,* its use is, to the same extent as that of any other species of property, subject, within the several states, to the control which they may respectively impose in the legitimate exercise of their powers over their purely domestic affairs, whether of internal commerce or of police." *Patterson v. Kentucky,* 97 U. S. 501, 504, 506, affirming 11 Bush, 311.

It is said in the opinion of the court in that case that "the Kentucky statute under examination . . . is, in the best sense, a mere police regulation, deemed essential for the protection of the lives and property of citizens. It expresses in the most solemn form the deliberate judgment of the state that burning fluids which ignite or permanently burn at less than a prescribed temperature are unsafe for illuminating purposes. . . . The right of property in the physical substance, which is the fruit of the discovery, is altogether distinct from the right in the discovery itself, just as the property in the instruments or plate by which copies of a map are multiplied is distinct from the copyright of the map itself.'"

See, also, *Minnesota v. Barber,* 136 U. S. 313, 326, 327, 10 Sup. Ct. 862; *Walla Walla v. Walla Walla W. Co.* 172 U. S. 1, 16, 19 Sup. Ct. 77; *Webber v. Virginia,* 103 U. S. 344, 348; *Emert v. Missouri,* 156 U. S. 296, 316, 317, 15 Sup. Ct. 367; *Bement v. Nat. H. Co.* 186 U. S. 70, 90, 91, 22 Sup. Ct. 747.

But state courts and some federal courts differ widely as to what constitutes a legitimate exercise of domestic or police powers of a state over tangible property coming into existence by virtue of a patented device. The supreme court of the United States does not seem to have reached the question here presented. In the earliest federal case found, a statute of Indiana was under consideration which required any obligation taken for a patent right to have inserted in the body of the instrument and above the signature of the maker the words "Given for a patent right," and made it a misdemeanor not to comply with such statute. The case came before Mr. Justice DAVIS of the supreme court of the United States, who held that:

"The law of Indiana regulating the sale of patent rights within that state is unconstitutional and void. Property in inventions exists by virtue of the laws of Congress, and no state has a right to interfere with its enjoyment, or to annex conditions to the grant. If the patentee complies with the law of Congress, he has a right to go into the open market anywhere within the United States and sell his property." *Ex parte Robinson,* 2 Biss. 309, Fed. Cas. No. 11,932.

That case was followed by Mr. Justice SWAYNE of the supreme court of the United States, in considering a similar statute of Ohio, where a note taken for a patent right was required to have the words "Given for a patent right" prominently written or printed on the face thereof and above the signature, and it was held that such statute impaired the value of the property in the patent right created by the constitution and laws of the United States, and hence was unconstitutional and void. *Woollen v. Banker,* 2 Flip. 33, Fed.

Cas. No. 18,030.    The Indiana statute was again considered
by the United States circuit court for Indiana, Judge Woods
presiding, and it was again held to be "clearly unconstitu-
tional," citing and following *Ex parte Robinson, supra,* and
four adjudications of the supreme court of Indiana; and it
was there pointed out that *Patterson v. Kentucky, supra,*
had "reference to local restrictions upon the sale or use of
tangible property" coming into existence under the patent,
and had no application to a note taken on the sale of an in-
terest in a patent right.   *Castle v. Hutchinson,* 25 Fed. 394.
So it has been held that a state cannot impose a discriminat-
ing tax upon the exclusive right given to a patentee.   *In re
Sheffield,* 64 Fed. 833, 834.

An act of the legislature of Pennsylvania to regulate the
execution and transfer of notes given for patent rights re-
quired that any promissory note or other negotiable instru-
ment given for an interest in a patent should have written or
printed on the face thereof the words "Given for a patent
right," otherwise the note would be nonnegotiable, and, if
taken with knowledge, the person taking the same would be
deemed guilty of a misdemeanor; and the federal circuit
court of the eastern district of that state held that:

"The monopoly granted by a patent is a property right
created under the constitution and laws of the United States,
and by those laws made assignable, and therefore a state law
which prescribes that negotiable instruments in the ordinary
form shall not be given or accepted for an assignment of the
patent itself is unconstitutional, as obstructive of the exercise
of a right vested by federal law."   *Pegram v. Am. A. Co.*
122 Fed. 1000.

It has been held by the supreme court of Illinois that a state
statute of similar import to the Pennsylvania statute was "un-
constitutional and void as an attempt to regulate and control
by state legislation a matter of which Congress has sole ju-
risdiction."   *Hollida v. Hunt,* 70 Ill. 109.   So it has been
held in Minnesota that "a state has no power to regulate or

restrict the sale of patent rights." *Crittenden v. White,* 23 Minn. 24. So the supreme court of Michigan held that a statute of that state "imposing unusual conditions on the transfer of patent rights by requiring notes given therefor to show it, and making it a misdemeanor to take or transfer them otherwise, is unconstitutional as impairing rights that are regulated and protected by Congress." *Cranson v. Smith,* 37 Mich. 309. To the same effect, *People v. Russell,* 49 Mich. 617, 14 N. W. 568; *Wilch v. Phelps,* 14 Neb. 134, 15 N. W. 361. In *Comm. v. Petty,* 96 Ky. 452, 29 S. W. 291, it was held that:

"While the states have jurisdiction to legislate on the matter of the use or sale of the article which is brought into existence by virtue of the application of the patented process, Congress alone has power to regulate the sale of the right of the inventor in his discovery, and the manner of the disposition of such rights."

To the same effect, *Rumbley v. Hall,* 107 Ky. 349, 351, 54 S. W. 4.

As indicated, there are adjudications the other way, notably in New York, Pennsylvania, and Ohio. The adjudications seem to differ mostly upon the construction given to the local statute, or the effect given to the decision of the supreme court of the United States in *Patterson v. Kentucky,* 97 U. S. 501. So far as this court has spoken on the subject it is in harmony with the views above expressed. *State v. Lockwood,* 43 Wis. 403. It should be observed that Mr. Justice SWAYNE was a member of the court and concurred in the decision of *Patterson v. Kentucky, supra,* and yet no mention was made therein of his decision in *Woollen v. Banker,* 2 Flip. 33, Fed. Cas. No. 18,030, decided only a little more than a year before, as it obviously would have been had there been any intention of overruling it. The same is true as to the decision of Mr. Justice DAVIS in *Ex parte Robinson,* 2 Biss. 309, Fed. Cas. No. 11,932, made a

few years previously, and followed by Justice SWAYNE in the case mentioned. We are constrained to hold, upon reason and authority, that ch. 438, Laws of 1903, is an invasion of the federal statute, and therefore unconstitutional and void.

3. The special verdict, as originally drawn and submitted to the jury, contained this question: "Did the defendant, *Rice,* at the time he talked with Mr. Russell relative to an extension of the time of payment of the note, have knowledge of all the facts and circumstances which he now claims to know?" After the jury returned into court and asked for information on the special verdict, the court withdrew that question from the consideration of the jury; and, after the rendition of the verdict, the court found, as matters of fact, "that within a few days after maturity of said note sued on, the defendant, *Rice,* inquired of one of the plaintiff's officers as to whether the time of payment thereon could be extended, but the defendant did not, at the time of making such inquiry or at any other time, promise to pay said note or any part thereof, except the promise made in and by the note itself; that the defendant, at the time he made such inquiries, did not have full knowledge as to all the facts, or as to his rights in the premises;" and, as a conclusion of law, the court found "that said defendant, *G. R. Rice,* did not, after the giving of said note upon which this action is brought, ratify said note in any manner." The plaintiff contends that such findings of the trial court were not justified by the evidence, and that that court should either have answered the seventeenth question in the affirmative or submitted the same to the jury for determination. After careful consideration we are unable to say that the evidence bearing upon the question is undisputed, and hence it was error to withdraw the question from the jury.

4. The principal controversy is as to whether the defendant was induced to execute the written agreement and the

notes in question by false representations made on the part
of the plaintiff. Numerous exceptions are taken to the ad-
mission of testimony. A considerable portion of such testi-
mony is mere hearsay. Nine witnesses were allowed to tes-
tify as to statements made on the part of the plaintiff to other
persons, not in the presence or hearing of the defendant, and
some of them long subsequent to the execution of the notes
and agreement. Of course, such statements could not have
induced the defendant to sign such papers. The admission
of such testimony is sought to be justified, "not for the pur-
pose of proving the representations made to the defendant,"
but to prove bad faith and an actual intent to deceive on the
part of the plaintiff. This court has recently held that, in an
action upon a contract of sale which the defendant claimed
he had been induced to sign by false representations on the
part of the plaintiff, it is immaterial whether such represen-
tations were made with a fraudulent intent or not, and that
the admission of evidence of similar transactions between the
plaintiff and other persons in no way involved in the litiga-
tion, offered for the purpose of showing such intent, was prej-
udicial error. *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 18,
19, 98 N. W. 923, and cases there cited. To permit such
proof of numerous independent transactions imposed upon
the plaintiff the burden of disproving a multitude of collat-
eral charges, not in issue nor involved in the controversy, and
therefore was highly prejudicial to the plaintiff. For the
same reason it was error to admit in evidence newspaper arti-
cles, circulars, pamphlets, etc., in no way tending to prove
that the defendant was induced to execute the written agree-
ment and notes in question by false representations made on
the part of the plaintiff. Many of such articles were never
seen by the defendant, and some of them were not in print
until after the making of the notes and the agreement. And
yet the court charged the jury that they might consider all
representations proven to have been made to the defendant

up to the giving of the note in suit, whether made by word of mouth or in written or printed statements, proven to have been made by the company's officers or agents, providing such statement was as to some existing or past fact. It is well settled that "representations, to be fraudulent, must relate to a present or past state of facts, and relief as for deceit cannot be obtained for nonperformance of a promise looking to the future." *Patterson v. Wright,* 64 Wis. 289, 25 N. W. 10; *Louis F. Fromer & Co. v. Stanley,* 95 Wis. 56, 69 N. W. 820; *Field v. Siegel,* 99 Wis. 605, 609, 75 N. W. 397; 14 Am. & Eng. Ency. of Law (2d ed.) 39. As a general rule, a mere expression of opinion or belief as to the value or quality of an article sold, if so intended and understood, is not a representation of fact, and, though false, does not amount to fraud. The mere fact that a statement takes the form of an expression of opinion, however, is not always conclusive. Whenever there is any doubt as to whether it is made as a mere expression of opinion or as a statement of fact, the question must be determined by the jury or court. 14 Am. & Eng. Ency. of Law (2d ed.) 34–41; *Mosher v. Post,* 89 Wis. 602, 605, 62 N. W. 516; *Maltby v. Austin,* 65 Wis. 527, 27 N. W. 162; *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179; *Forest L. Co. v. Hanley,* 94 Wis. 23, 68 N. W. 413; *Deming v. Darling,* 148 Mass. 504, 20 N. E. 107. Moreover, false representations, to be actionable, must be relied upon by the purchaser, and be of such a character and made under such circumstances as to justify the purchaser in relying upon them. *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932. See *Kimball v. Bangs,* 144 Mass. 321, 11 N. E. 113. Numerous exceptions were well taken to the admission of testimony in violation of one or more of the principles of law stated. Of course the terms of the contract were embodied in the written agreement, which speaks for itself.

5. Error is assigned because the defendant was allowed to read from the depositions of C. F. Mohr, J. E. Jones, and J. M. Russell, taken as adverse witnesses under sec. 4096, Stats. 1898, when such witnesses were present in court. This court has recently held that the president, secretary, or other principal officer of a corporation is, in effect, a party to the action, so that his examination, so far as competent, becomes independent evidence in the case, notwithstanding his presence in court. *Johnson v. St. P. & W. C. Co.* 126 Wis. 492, 105 N. W. 1048. Each of the witnesses mentioned appears to have been an officer of the plaintiff corporation. It is otherwise in case of a mere employee. *Hughes v. C., St. P., M. & O. R. Co.* 122 Wis. 258, 99 N. W. 897; *Eastern R. Co. v. Tuteur, ante,* p. 382, 105 N. W. 1067.

6. Error is assigned for the rejection of testimony. We perceive no abuse of discretion in limiting the respective parties to fifteen witnesses on the question of the utility of the device covered by the patent. .

7. In charging the jury the court submitted questions 2, 4, 6, 8, 10, and 12 together, for the reason, as stated therein, that the instructions given thereon applied equally to each, and then submitted together questions 3, 5, 7, 9, 11, and 13, each of which was dependent upon the answer to one of such even-numbered questions. This method of submitting a special verdict is contrary to the spirit of the statute and to numerous adjudications of this court, commencing with *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 78 N. W. 442. Sec. 2858, Stats. 1898.

8. The first question submitted was whether, at the time the note was given, the patented device had any practical utility for the purposes for which it was patented. In charging the jury on the subject they were told that they must confine their "inquiry to the purposes named in the patent and those only," but did not state the full purpose of the patent. This was misleading, although the jury were allowed

to take the patent to their room and construe it for themselves.

9. Error is assigned because the court refused to instruct the jury to the effect that they must answer the first question "Yes," unless it was established that the device was of no practical value; that, if the device was of any practical utility with any kind of coal, then they should answer that question in the affirmative. We perceive no reason why such instructions or their equivalent should not have been given. Contrary to rules of law already stated, the court refused to instruct the jury to the effect that if the defendant had full opportunity to investigate the operation of the device and there was no concealment nor fraud on the part of the plaintiff, then it became the duty of the defendant to investigate and form his own opinion as to the value and utility of the device, and he could not rely upon mere expressions of opinion made by the officers or agents of the company.

10. Counsel for the plaintiff complain because the trial court did not follow the ruling of this court in *Herman v. Gray,* 79 Wis. 182, 48 N. W. 113. But the question as to the want of consideration, alleged as a defense in the answer, was not submitted to the jury. Besides, the judgment dismissing the complaint, with costs, is not based upon the special verdict, but, as indicated, upon the findings of the court. This renders it unnecessary to review the numerous errors assigned, several of which seem to be well taken. The case seems to have been tried upon a misconception as to the legal rights of the parties. Upon a retrial the special verdict should be made to conform to the issues presented by the pleadings. We cannot say, as a matter of law, that the evidence fails to sustain any of the findings of the jury to the effect that the defendant was induced to execute the written agreement and notes in question by false representations made on the part of the plaintiff. *Pratt v. Hawes,* 118 Wis. 603, 611, 612, 95 N. W. 965. The rules of law applicable to the

trial of such a question are simple and well understood. Enough has been said to serve as a guide upon a new trial.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.