CONOVER and others, Respondents, vs. KNIGHT, Appellant.

*November 26 — December 17, 1895.*

*(1) Court and jury: Special verdict: Changing findings.  (2) Appeal: Costs: Unnecessary printing.*

1. It is an invasion of the province of the jury for the court to change findings of a special verdict where the evidence in support of such findings, treating it as undisputed, is sufficient to sustain them.
2. On an appeal involving the question whether findings of a special verdict were properly changed by the court, it was not necessary, under Supreme Court Rule VIII, to print more of the evidence than so much on the part of the appellant as would support the findings in his favor. The printed case of more than 430 pages, in this instance, containing much more of the evidence than was necessary, the appellant is allowed, in the taxing of costs, for 130 pages only.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This action was commenced November 2, 1891. The complaint alleges, in effect, that the plaintiffs, as copartners, were doing business as architects at Ashland, and as such, from October 1, 1889, until November 1, 1890, they rendered services to the defendant, at his request, in forming and drawing plans and making estimates for and superintending the erection of a building known as the Knight Block, in Ashland, for the agreed price of four per cent. of the gross cost of said building, which was $120,000; that the defendant had only paid on account of such services $1,300, leaving a balance of $3,500. For the second cause of action, they alleged that, as such architects, they performed extra work and services for the defendant in the replanning of the roofing twice, and that the same were reasonably worth $200; and, for the third cause of action, alleged that they performed extra work in the replanning of the roof trussing, at the request of the defendant, which was reasonably worth $200; and demanded judgment for $3,900, with interest.

The answer consisted of admissions, denials, and counter allegations by way of defense, and counterclaims, and prayed that the complaint be dismissed, and for judgment against plaintiffs for $71,300, with interest and costs. The plaintiffs replied, and denied each and every allegation of the several counterclaims. The defendant was thereupon required to give a bill of particulars of his claims, and the same was given, and consisted of nineteen different items, aggregating nearly $70,000; but they were mostly ruled out for insufficiency of the bill of particulars, or otherwise.

At the close of the trial, January 12, 1894, the jury returned into court with their verdict, consisting of answers to fourteen questions. The tenth, twelfth, and fourteenth are herein given as returned by the jury, together with the modifications thereof by the court, June 27, 1894, and the others are given in substance, wherein the jury find as follows: (1) *By the court:* That the plaintiffs were copartners, doing business as architects, at the time mentioned in the plaintiffs' complaint. (2) *By the court:* That the plaintiffs, as architects, between August 16, 1889, and on or about November 1, 1890, did render services for the defendant at his request in forming and drawing plans, in making estimates, and superintending the erection of the Knight Block, as alleged in the plaintiffs' complaint. (3) *By the court:* That the defendant did promise to pay the plaintiffs, for their said services as architects and superintendents, four per cent. of the gross cost of said building. (4) *By the court:* That the gross cost of said building was $120,000. (5) *By the court:* That the plaintiffs had been paid, in all, on said services, $1,300. (6) That the plaintiffs' services were not worth anything for their alleged extra work in replanning of the roofing of said building and in replanning the roof trusses. (7) That the plaintiffs did agree, when they entered into the said contract with the defendant, that the plaintiff *Conover* should give his personal services in superintending the con-

struction of said building.  (8) That the original agreement was modified by the plaintiffs and the defendant, by authorizing the plaintiffs *Porter* and *Padley* to superintend, or to assist in superintending, the construction of said building. (9) That the plaintiffs were discharged by the defendant in October, 1890, from further superintending the construction of said building.  (10) " If you answer the last question by ' Yes,' were plaintiffs discharged for good and sufficient reasons? "  *Answer:* " Yes."  (This answer was changed by order of the court, June 27, 1894, to " No.")  (11) That the plaintiffs did not give to the construction of said building the superintendence required by the terms of the agreement or understanding of said parties.  (12) " Did plaintiffs perform their part of said agreement substantially and according to the terms thereof? "  *Answer:* " No."  (This answer was changed by order of the court, June 27, 1894, to " Yes.") (13) That the defendant did not sustain any damage by the alleged want of ordinary diligence and skill of plaintiffs in carrying out their part of said contract.  (14) " What is due plaintiffs, if anything, over and above all setoffs? "  *Answer:* " Nothing."  (This answer was changed by the court, June 27, 1894, to " $2,360.")

Upon the verdict rendered by the jury and so changed by the court, the court ordered judgment in favor of the plaintiffs for $2,360, with interest thereon from October 31, 1890, and costs.  From the judgment entered thereon accordingly the defendant appeals.

For the appellant there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*

For the respondents there were briefs by *H. W. Chynoweth* and *Tomkins & Merrill,* and oral argument by *Mr. Chynoweth.*

CASSODAY, C. J.  This case is here for the second time upon a question of mere practice.  84 Wis. 639.  The ques-

tion here presented is whether the trial court properly or improperly changed the answers of the jury to the tenth, twelfth, and fourteenth questions of the special verdict, as indicated in the foregoing statement. Immediately upon the rendition of that verdict, January 12, 1894, the defendant moved for judgment thereon in his favor; and the plaintiffs moved to set aside the verdict and for a new trial. The court took both of such motions under advisement; and thereafter the plaintiffs moved the court to change the answers of the jury to the tenth, twelfth, and fourteenth questions, as indicated, and that, when so changed, the plaintiffs have judgment upon the verdict so amended for $2,360, with interest,— which last-named motion the court also took under advisement. After holding all three of the motions under advisement for nearly five months and a half, the court finally, and on June 27, 1894, by order, changed the jury's answers to the tenth, twelfth, and fourteenth questions as indicated, and then ordered judgment thereon in favor of the plaintiffs and against the defendant for the amount mentioned, with interest and costs.

Such change of the findings of the jury is sought to be justified on the ground that the first five questions in the special verdict were each and all answered by the court to the effect that the plaintiffs were architects, as alleged, that as such they rendered the services for the defendant at his request as alleged, that the defendant promised to pay the plaintiffs for such services four per cent. on the gross cost, which was $120,000, and had only paid thereon $1,300; and that, as there is no exception to any of such findings by the court, they must be regarded as verities in the case; and that such findings are sufficient of themselves to entitle the plaintiffs to judgment for a larger amount than they recovered; and hence that the defendant is not aggrieved.

The difficulty with such contention is that it ignores the issue made upon the plaintiffs' cause of action and the findings

of the jury thereon in favor of the defendant. The answer is voluminous, but to the effect that, by the terms of the contract, the plaintiffs were to "prepare full, true, complete, and necessary plans, specifications, working plans, and detail drawings necessary, proper, or convenient for the erection and completion" of the building, and also superintend the entire construction and equipment thereof; that they wholly failed, neglected, omitted, and refused to perform said contract on their part in any respect whatever; that they made various false representations, statements, and pretensions in regard to the building and the requirements thereof, and that they were careless, negligent, and unskilful in their work to the defendant's damage; that the plaintiffs failed to superintend the work; that the plans, specifications, and detail drawings were inadequate and inaccurate, and the defendant was obliged to procure new ones; that it became and was absolutely necessary for the defendant to proceed to the erection, completion, and equipment of said building on his own behalf, independently of the plaintiffs, but upon the same general plan originally intended; and that it was completed in substantial compliance with such plan, at a very much greater cost than had been agreed, to wit, the cost of $120,000. By the ninth, tenth, twelfth, and fourteenth findings, the jury found, in effect, that the plaintiffs were discharged by the defendant in October, 1890, for a good and sufficient reason; that they did not perform their part of said agreement substantially and according to the terms thereof; and that nothing was due to them.

As the question is here presented, we must treat all the evidence on the part of the defendant in support of these findings as undisputed; and, so treating the same, we must hold that there is evidence sufficient to sustain these findings. This being so, we must hold that the court invaded the province of the jury in changing the answers to the tenth, twelfth, and fourteenth questions. *Duhl v. Milwaukee*

*City R. Co.* 65 Wis. 371; *Ohlweiler v. Lohmann*, 82 Wis. 198. Besides, the eleventh finding of the jury, which has remained unchanged, is in direct conflict with the twelfth finding as changed by the court, since the one finds that the plaintiffs did not give to the construction of the building the superintendence required by the terms of the agreement or understanding of the parties, and the other that the plaintiffs did perform their part of the agreement substantially and according to the terms thereof. This being so, and the contract alleged in the complaint being entire, it is obvious, under numerous decisions of this court, that the special verdict, as so modified by the court, is insufficient to support the judgment.

The printed case consists of 430 pages. The rule provides that it "shall contain a complete abstract or abridgment of *so much* of the record . . . as may be necessary to a full understanding of the questions presented for decision." Rule VIII. To comply with this rule, we do not think it was necessary to have printed any more of the evidence than so much on the part of the defendant as would support the findings of the jury in his favor. In taxing costs in this court, the defendant is only to be allowed for printing the case 130 pages.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.