INDUSTRIAL CO-OPERATIVE UNION, Appellant, vs. LEWIS and others, Respondents.

*April. 6—July 13, 1921.*

*Corporations: Action to enforce subscriptions to capital stock: Defenses: Fraud and misrepresentations: Past or present facts: Future transactions: Evidence: Representations on other occasions: Stipulations: Consolidating actions: Cumulative evidence: Trial: Changing answers in special verdict.*

1. In an action by a corporation on a note given upon subscribing for capital stock of the corporation, where the maker testified to fraudulent representations by the agent of the corporation, which were denied by the agent, the jury's finding against the fraud cannot be said to be against the overwhelming weight of the evidence.

2. Where the defense to the action was that the subscription was induced by fraudulent representations, evidence that the agent of the corporation had made similar representations to other

subscribers to procure notes from them is immaterial on the question whether such representations were made, and for that reason is incompetent as impeaching testimony.

3. In determining whether a verdict is against the great weight of the evidence the trial court cannot consider evidence which is not only immaterial but is without probative force.

4. When a special verdict has been returned it is an invasion of the province of the jury for the court to change the findings if there is evidence which, if undisputed, supports them. The question as to where the weight or preponderance of the evidence lies is not material.

5. Where numerous actions were begun on notes given by subscribers for corporate stock, in each of which the defense was fraudulent representations, a stipulation that one case should be tried and its decision should determine all the others, and that at the trial of such case each defendant should be permitted to testify as to his dealings with the plaintiff, did not make the testimony of the different defendants as to representations made to them by the agent of the corporation cumulative testimony which could be considered in determining whether he made the representations charged to the defendant whose case was on trial.

6. Representations, to be fraudulent, must relate to a present or past state of facts. Mere promises, predictions, or opinions as to future transactions do not warrant relief as for deceit where they are not performed or do not come true.

SIEBECKER, C. J., and VINJE, J., dissent.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Reversed.*

This action was brought to recover on a promissory note, the defense being that its execution was induced by fraud. The jury returned the following special verdict:

"(1) Did the agent of the plaintiff, *Industrial Co-operative Union,* for the purpose of inducing the defendant to sign the stock subscription and promissory note in question, represent to the defendant—

"(a) That the *Industrial Co-operative Union* was an established corporation doing business in the city of Milwaukee? *A.* No.

"(b) That the *Industrial Co-operative Union* owned a large warehouse in Milwaukee which it used for storing and handling farm produce? *A.* No.

"(c) That the *Industrial Co-operative Union* would purchase all the milk produced by the defendant on his farm? *A.* Yes.

"(d) That the *Industrial Co-operative Union* would make special arrangement to transport the milk of the defendant, and other farmers in his vicinity, to the place of business of the plaintiff in Milwaukee by January 1, 1917? *A.* Yes.

"(e) That the *Industrial Co-operative Union* would notify the defendant as soon as it was ready to receive said milk? *A.* Yes.

"(f) That the *Industrial Co-operative Union* would purchase all the produce raised on the defendant's farm? *A.* Yes.

"(g) That the *Industrial Co-operative Union* would sell farm supplies and merchandise to the defendant at less than the market price? *A.* Yes.

"(2) If you answer any of the items of question 1 'Yes,' then answer this: Did the plaintiff believe such representations to be true? *A.* Yes.

"(3) If you answer question 2 'Yes,' then answer this: Did the defendant rely upon such representations in signing said stock subscription and promissory note? *A.* Yes.

"(4) If you answer either item (a) or item (b) of question 1 'Yes,' then answer this: Was such a representation false? *A.* ——.

"(5) If you answer either item (c) or item (d) or item (f) or item (g) of question 1 'Yes,' then answer this: Was said *Industrial Co-operative Union* ready and able January 1, 1917—

"(a) To purchase all the milk produced by the defendant on his farm? *A.* No.

"(b) To transport the milk of the defendant, and other farmers in his vicinity, to the plaintiff's place of business in Milwaukee? *A.* No.

"(c) To purchase all the produce raised on defendant's farm? *A.* No.

"(d) To sell farm supplies and merchandise to the defendant at less than market price? *A.* No.

"(6) (a) Did the *Industrial Co-operative Union* notify the defendant by January 1, 1917, that it was ready to receive his milk? *A.* No.

"(b) Or that it was ready to fulfil its said representations specified in question 1? *A.* No.

"(7) If you answer any of the items of question 1 'Yes' and questions 2 and 3 'Yes,' then answer this: Ought the defendant, in view of his intelligence and experience, in the exercise of ordinary care to have known or discovered the falsity of said representations or the inability and unreadiness of the *Industrial Co-operative Union* to fulfil its said representations by January 1, 1917, before signing said stock subscription and promissory note? *A.* Yes."

There were the usual motions by the plaintiff and defendant, and upon a hearing the court entered an order changing the answers of the jury to subdivisions (a) and (b) of question 1 from "No" to "Yes," supplying the answer "Yes" to question 4, changing the answer to question 7 from "Yes" to "No," and upon the verdict as amended the defendant had judgment dismissing the complaint, from which the plaintiff appeals.

*Michael Levin* of Milwaukee, for the appellant.

For the respondents there was a brief by *Gittings & Moyle,* attorneys, and *Guy A. Benson,* of counsel, all of Racine; and the cause was argued orally by *Mr. O. R. Moyle* and *Mr. Benson.*

The following opinion was filed May 3, 1921:

Rosenberry, J.   The questions presented upon this appeal are complicated by a stipulation entered into between the parties at the commencement of the trial to the following effect: It is first recited that the actions, forty-seven in number, are on account of subscriptions given for the capital stock of the plaintiff company; that the questions involved in each case are similar, and that it had been agreed that the action against *E. E. Lewis* should be tried; that all of the defendants were to abide by the decision in that case. It is then provided:

"First. That all the above entitled actions are hereby consolidated and the same may be deemed one action."

The second and third clauses of the stipulation provide for entry of judgment against each defendant, depending upon the result in the *Lewis* case. It is then further provided by the fourth paragraph that any party may appeal to the supreme court from the decision of the circuit court and that the rights of the parties under the stipulation shall not be effective until a decision and determination by the supreme court. At the opening of the trial it was stipulated orally upon the record "that in this action any or all of said defendants shall be permitted to testify about their dealings with the plaintiff on the trial of this action if they so desire." This latter stipulation was entered into evidently for the purpose of preserving the right of any defendant to offer evidence peculiar to his situation. It was not claimed upon the trial that the representations were made to any of the various defendants at a time when they were together, but it appeared that they were made at different times and upon separate occasions.

It is argued that the trial court was in error in changing the answers to subdivisions (a) and (b) of question 1 and the answer to question 7 of the special verdict. In passing upon that matter the court said:

"The court is satisfied that the clear weight of satisfactory evidence is that the plaintiff's agent did represent to the defendant that the *Industrial Co-operative Union* was then an established corporation doing business in the city of Milwaukee and that it owned a large warehouse in Milwaukee which it used for storing and handling farm produce. Several witnesses unhesitatingly and convincingly so testified, and the only contradiction thereof is made by the plaintiff's agent."

As to the representations made to *Mr. Lewis,* the plaintiff's agent testified that they were not made, and *Mr. Lewis* testified that they were made, and as to those representations there was no other evidence upon either side; and this

is substantially the situation as to each of the other defendants.

The making and execution of the note was admitted. The burden was upon the defendant to establish by clear and satisfactory evidence that his signature thereto had been secured by fraud. Whether it had been so secured was a pure question of fact, a matter wholly and peculiarly within the province of the jury. The plaintiff, by stipulating that the actions might be tried together and that evidence might be received as to each defendant, subjected itself to the risk of its cumulative effect upon the jury. But a jury drawn from the neighborhood, having heard the evidence and seen the witnesses, chose to believe the agent of the plaintiff. We do not understand upon what theory the findings of the jury can be said to be against the overwhelming weight of the evidence. The jury by its verdict said that the testimony of the plaintiff's agent was more credible than that of the defendant.

If in setting aside the verdict the trial court considered evidence to the effect that similar representations had been made to other persons and under other circumstances and at other times, he proceeded upon a mistaken theory of the law, for such evidence was not material upon that issue and no claim of materiality could be made for it in the absence of the stipulation. It cannot be considered as impeaching testimony, for the representations made to another defendant are not material upon the question as to what representations were made to the defendant *Lewis* and therefore furnish no basis for impeachment. If the question involved the matter of knowledge, design, or intent, evidence of similar acts at different times and places might be material. *Chase v. Blodgett M. Co.* 111 Wis. 655, 87 N. W. 826; *Welch v. Dunning,* 163 Wis. 535, 158 N. W. 323. Here the question involved does not relate to knowledge, design, or intent. The question at issue is, Were the representa-

tions made at all at the time and place in question? Evidence that similar representations were made at a different time and place and under different circumstances to another defendant is no evidence that they were made at the time and place in question to the defendant *Lewis*. *Lowe v. Ring*, 123 Wis. 107, 101 N. W. 381; *Morawetz v. McGovern*, 68 Wis. 312, 32 N. W. 290. In a case where nine witnesses were allowed to testify as to statements made on the part of the plaintiff to other persons not in the presence or hearing of the defendant and some of them long subsequent to the execution of the notes and agreement, this court said:

"Of course, such statements could not have induced the defendant to sign such papers. The admission of such testimony is sought to be justified, 'not for the purpose of proving the representations made to the defendant,' but to prove bad faith and an actual intent to deceive on the part of the plaintiff. This court has recently held that, in an action upon a contract of sale which the defendant claimed he had been induced to sign by false representations on the part of the plaintiff, it is immaterial whether such representations were made with a fraudulent intent or not, and that the admission of evidence of similar transactions between the plaintiff and other persons in no way involved in the litigation, offered for the purpose of showing such intent, was prejudicial error. *Standard M. Co. v. Slot*, 121 Wis. 14, 98 N. W. 923. To permit such proof of numerous independent transactions imposed upon the plaintiff the burden of disproving a multitude of collateral charges, not in issue nor involved in the controversy, and therefore was highly prejudicial to the plaintiff." *J. H. Clark Co. v. Rice*, 127 Wis. 451, 464, 106 N. W. 231.

In determining whether the verdict of the jury is against the great weight of the evidence the trial court cannot take into consideration evidence which is not only immaterial but is without probative force.

The court also proceeded upon a wrong theory of the law as to when a trial court should set aside the verdict of a jury. Where, as here, the jury has returned a special verdict, it is an invasion of the province of the jury for the

court to change the jury's findings if there is evidence which, if undisputed, supports the findings. The question as to where the weight or preponderance of the evidence lies is not material. *Conover v. Knight,* 91 Wis. 569, 65 N. W. 371; *Ohlweiler v. Lohmann,* 82 Wis. 198, 52 N. W. 172. In this case, if the witnesses were equally credible, the evidence was almost balanced. The scale must turn, therefore, in favor of that which is the more credible, a question which is peculiarly within the province of the jury. While the stipulation made evidence as to transactions between the plaintiff's agent and other defendants admissible, it did not give such evidence, when introduced, materiality as to any particular issue or endow it with probative force. In determining whether or not the evidence sustains the finding of the jury as to the representations made to any particular defendant, only evidence material upon that issue may be considered. The trial court was in error, therefore, in setting aside the answers to subdivisions (a) and (b) of question 1 and the answer to question 7, and the motion of plaintiff for judgment upon the verdict should have been granted.

The trial court correctly held that subdivisions (a) and (b) of question 1 covered "the pivotal and controlling elements of the case." Subdivisions (c) to (g), inclusive, relate to future transactions. Representations, to be fraudulent, must relate to a present or past state of facts. Mere promises, predictions, or opinions as to future transactions or events do not warrant relief as for deceit where they are not performed or do not come true. *J. H. Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231; *Warner v. Benjamin,* 89 Wis. 290, 296, 62 N. W. 179.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff as indicated in the opinion.

DOERFLER, J., took no part.

The following opinion was filed May 10, 1921:

SIEBECKER, C. J. (*dissenting*).  I cannot concur in the opinion of the court.  The stipulation of the parties is construed by the court as not affecting the competency and admissibility of the evidence of the defendants who were not made parties to the action against *Lewis*.  The stipulation entered into by the different defendants to the numerous actions when the action against *Lewis* was called for trial shows that these different actions were to "be deemed as one action" for the purpose of the trial of the issues of fraud raised by all the defendants.  The pleadings in all the actions presented the inquiry whether or not the stock subscriptions were secured from all the defendants in the different actions by fraudulent representations of plaintiff's agent, Nickol.  It was alleged in all these cases that Nickol made the false and fraudulent representations that the plaintiff was a corporation doing business in Milwaukee, that it had a building there in which it was conducting a business, and that plaintiff in the following January would have a milk train collect the milk of the subscribers of stock, take it to Milwaukee, and market it.  I am convinced that the parties intended to make the evidence of the making of such alleged fraudulent representations to all of the defendants separately competent to prove that Nickol, in substance, made these representations to each defendant for the purpose of securing the stock subscriptions and the notes, and that the circuit court properly construed the stipulation to this effect.  The evidence offered, when considered in this light, it seems to me, abundantly sustains the circuit court's conclusion that the weight of the evidence is overwhelmingly against the finding of the jury that the agent, Nickol, did not make such alleged false representations to the defendant *Lewis*.  The trial court was peculiarly well qualified to pass upon the weight and credibility of all the witnesses, and

his decision in this case should not be disturbed for the reason that it is not clearly wrong.

VINJE, J.   I concur in the foregoing dissenting opinion by Mr. Chief Justice SIEBECKER.

A motion for a rehearing was denied, with $25 costs, on July 13, 1921.